Marvin PERKINS, Plaintiff,

v.

REGENTS OF the UNIVERSITY OF MICHIGAN, Defendant.

Civil Action No. 94–40514.

United States District Court, E.D. Michigan, Southern Division.

Aug. 12, 1996.

Gregory v. Murray, Bernice M. Tatarelli, Vercruysse, Metz & Murray, P. C., Bingham Farms, MI, for defendant.

Gary A. Benjamin, Detroit, MI, Dennis C. Mitchenor, Grosse Pointe Farms, MI, for plaintiff.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

GADOLA, District Judge.

Before the court is the defendant's motion for summary judgment on the Title VII (42 U.S.C. § 2000e *et seq.*) racial discrimination and discharge and 42 U.S.C. § 1983 procedural due process claims asserted in this action. The plaintiff, Marvin Perkins, filed his complaint in the present action on February 15, 1996, asserting various state and federal claims based upon his termination of employment as the General Services Foreman of the Transportation Services Department of the University of Michigan. This court declined to exercise pendent jurisdiction over the state law claims and dismissed those claims without prejudice on February 25, 1994. Perkins amended his complaint to assert a cause of action under Title VII in addition to his claim under 42 U.S.C. § 1983 based upon alleged violations of his right to procedural due process on January 6, 1995. The defendant brought the present motion for summary judgment on May 17, 1996, asserting that Perkins has failed to establish a prima facie case of race discrimination under Title VII, that such a claim is barred by principles of *res judicata* because the facts were litigated in a state court proceeding under Michigan's Elliott–Larsen Civil Rights Act, MCLA § 37.2101 *et seq.*, and that Perkins has failed to state a prima facie claim under section 1983 based on procedural due process.

It should be noted initially that, at the June 21, 1996 hearing conducted on this motion, Perkins conceded that the defendant's motion properly stated the applicable principles governing Perkins's section 1983 claim and that those principles militated in favor of granting the defendant's motion with respect to that claim. This court then granted the defendant's motion for summary judgment on the procedural due process claim contained in Perkins's complaint. For the reasons stated on the record at that hearing, this court will dismiss that claim. This court will consider the defendant's motion for summary judgment regarding Perkins's remaining Title VII claim after a summary of the relevant facts and a recitation of the applicable standard of review.

### I. Factual Background

The facts underlying this matter are uncomplicated. In March of 1989, Perkins applied for a position as General Services Foreman of the Transportation Services Department for the University of Michigan. Perkins interviewed for the position along with at least five other white candidates and was hired by Patrick Cunningham, the Manager of the Department. Perkins replaced a white male who had retired from the Foreman position. According to Perkins's deposition testimony, Cunningham's decision to offer Perkins the Foreman position was not based on racial bias or otherwise.

When Perkins was hired, the Department was seeking to implement an inventory control system, to reduce excess stock and realize substantial cost savings. Perkins was

assigned the task of designing a computerized maintenance control system for this purpose. Perkins was also responsible for policies and procedures pertaining to inventory control, including those which reduced the potential for theft in the Department.

In early December of 1993, Cunningham had learned that, over an 18 month period, Perkins had ordered and approved payment for a large number of van jump seats, a vast majority of which could not be found in inventory or accounted for. Cunningham summoned Perkins into his office, explained what he had learned and asked Perkins if he could explain what had happened to the van jump seats. Perkins indicated that he would investigate the matter and report to Cunningham the following day. Cunningham informed Perkins that, if Perkins could not provide a satisfactory explanation for the missing inventory, he would be compelled to turn the matter over to the University's security department.

The following day, Perkins met with Cunningham and reported that he had contacted the jump seat supplier and was told that the supplier would gladly deliver the seats if, indeed, it had failed to deliver them. Perkins admitted that there was no way to demonstrate or prove that the jump seats had not been delivered, however, because Perkins had signed forms stating that he had received the seats. According to the records, 193 jump seats reportedly received by Perkins could not be accounted for.

Cunningham turned the matter over to security and Perkins was suspended pending an investigation into the missing jump seats and other potential inventory control violations. As the investigation proceeded, other problems were discovered, such as the unauthorized approval of accident report repairs without estimates and charging of meal expenses in violation of the University's reimbursement policies.

Upon the conclusion of the investigation, the University conducted a Disciplinary Review Conference on February 16, 1994. Present at the hearing were various University personnel, Cunningham, a representative from the University's Human Resources Department, Perkins and his attorney, Dennis

Mitchenor. The University again informed Perkins that he had failed to perform his duties as Foreman satisfactorily, relying on the evidence produced in the investigation. Perkins and his attorney were then permitted to present Perkins's side of the story.

Perkins admitted that he was not instructed by Cunningham to order 193 jump seats over an 18 month period and that he could not otherwise explain the need for ordering that many. The University records showed that only 36 of those seats were ever installed into University vans. Perkins admitted that he seldom checked to see if the Department already had jump seats in inventory before ordering additional seats. Finally, Perkins admitted that he often failed to ensure that the correct number of seats were delivered or placed into inventory. According to University estimates, Perkins's admitted conduct rendered the Department unable to account for over 100 jump seats, resulting in a total loss to the University of over $21,000.

Following the February hearing, Cunningham decided to terminate Perkins. Perkins was notified by a letter dated February 24, 1994, that his suspension was being converted into a discharge effective the date of his suspension, December 11, 1993. Cunningham's letter stated that Perkins was being terminated for "gross misfeasance" and detailed the various factors supporting that conclusion.

## II. Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact as to the existence of an essential element of the non-moving party's case on which the non-moving party would bear the burden of proof at trial. *Martin v. Ohio Turnpike Commission*, 968 F.2d 606, 608

(6th Cir.1992); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In considering a motion for summary judgment, the court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the non-moving party. *60 Ivy Street Corporation v. Alexander,* 822 F.2d 1432, 1435 (6th Cir.1987). The court is not required or permitted, however, to judge the evidence or make findings of fact. *Id.* at 1435–36. The moving party has the burden of showing conclusively that no genuine issue of material fact exists. *Id.* at 1435.

 A fact is "material" for purposes of summary judgment where proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties. *Kendall v. Hoover Co.,* 751 F.2d 171, 174 (6th Cir.1984). In other words, the disputed fact must be one which might affect outcome of the suit under the substantive law controlling the issue. *Henson v. National Aeronautics and Space Administration,* 14 F.3d 1143, 1148 (6th Cir.1994). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* Accordingly, where a reasonable jury could not find that the non-moving party is entitled to a verdict, there is no genuine issue for trial and summary judgment is appropriate. *Feliciano v. City of Cleveland,* 988 F.2d 649 (6th Cir. 1993).

 Once the moving party carries its initial burden of demonstrating that no genuine issues of material fact are in dispute, the burden shifts to the non-moving party to present specific facts to prove that there is a genuine issue for trial. To create a genuine issue of material fact, the non-moving party must present more than just some evidence of a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986):

> There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the [non-moving party's] evidence is merely colorable, or is not sig-

nificantly probative, summary judgment may be granted.

(Citations omitted); *see also Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). Consequently, the non-moving party must do more than raise some doubt as to the existence of a fact; the non-moving party must produce evidence that would be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.,* 738 F.Supp. 214, 217 (E.D.Mich.1990), *aff'd,* 929 F.2d 701 (6th Cir.1991).

### III. Analysis

In its June 20, 1996 reply brief, the defendant asserts that summary judgment is appropriate against Perkins's Title VII claim because, on October 11, 1995, the Circuit Court for the County of Washtenaw, Michigan granted the defendant's motion for summary judgment in Perkins's racial discrimination claims brought under Michigan's Elliott–Larsen Civil Rights Act, MCLA 37.2101 *et seq.* Because that judgment is final and has not been appealed, the defendant contends, it constitutes an adjudication on the merits and is entitled to full faith and credit pursuant to 28 U.S.C. § 1738.

Perkins submits that the defendant has waived its right to assert this defense because it was not raised in its answer to the complaint or in its original motion for summary judgment. Perkins further maintains that *res judicata* does not apply to this case because the Washtenaw County order granting the defendant's unopposed motion for summary judgment did not constitute a final decision on the merits of that claim.

 This court is not convinced that the October 11, 1995 order of judgment by the Washtenaw County Circuit Court is not entitled to full faith and credit. Under 28 U.S.C. § 1738, the preclusive effect of a prior state court judgment is determined according to the law of the state where that judgment was entered. *Allen v. McCurry,* 449 U.S. 90, 96, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980); *Arco v. Travelers, Ins. Co.,* 730 F.Supp. 59,

64 (W.D.Mich.1989). Michigan courts recognize that the doctrine of *res judicata* will bar a subsequent claim where the prior action resulted in a decision on the merits, the issues raised in the subsequent case were either resolved in the prior case or, through the exercise of reasonable diligence, might have been raised and resolved in the prior case, and both actions involve the same parties or their privies. *People v. Gates*, 434 Mich. 146, 154–57, 452 N.W.2d 627 (1990); *Moore v. Wicks*, 184 Mich.App. 517, 519–20, 458 N.W.2d 653 (1990); *Fellowship of Christ Church v. Thorburn*, 758 F.2d 1140, 1143 (6th Cir.1985). Michigan courts have long held that the question of preclusion does not depend upon whether "justice was done in the first suit," but upon whether the merits of the prior suit had been considered and decided. *Banks v. Billups*, 351 Mich. 628, 635, 88 N.W.2d 255 (1958) ("If a party fails in making a full presentation of his case, whereby judgment has passed against him, he cannot be permitted to make a better showing in a new suit."). This court need not decide whether the Washtenaw County Circuit Court's October 11, 1995 grant of the defendant's unopposed summary judgment motion constitutes an adjudication on the merits, however, because this court finds that Perkins's Title VII claim should be dismissed because Perkins has failed to meet his burden of stating a claim for racial discrimination or discharge.

As indicated above, Perkins has premised his claim of race discrimination against the University of Michigan upon violations of Title VII. The burden of proof in an employment discrimination case rests with the plaintiff to establish a prima facie case that his employment was adversely affected on the basis of race. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1972). This requires that the plaintiff establish by a preponderance of the evidence that (1) he was a member of a protected class; (2) he was subject to an adverse employment action; (3) he was qualified for the job; and (4) for the same or similar conduct he was treated differently than similarly situated non-minority employees. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824; *Mitchell v. Toledo Hospital*, 964 F.2d 577, 582 (6th Cir.1992); *Sisson v. Bd. of Regents of the Univ. of Michigan*, 174 Mich.App. 742, 746, 436 N.W.2d 747 (1989).

Critical to a plaintiff's case are the third and fourth elements of this test. To demonstrate that he is qualified, a plaintiff must show that he was performing his job to the satisfaction of his employer. *Ang v. Procter & Gamble Co.*, 932 F.2d 540, 548 (6th Cir.1991). A plaintiff may not create an issue of fact by challenging the soundness or wisdom of his employer's business decision. *Ang*, 932 F.2d at 549; *see also Wilson v. Communications Workers of America*, 767 F.Supp. 304, 307 (D.D.C.1991) (concluding that where a plaintiff fails to establish that his/her qualifications were similar to the qualifications of non-protected class employees, summary judgment in favor of the employer is appropriate). To satisfy the fourth element of this test, the plaintiff must demonstrate that the individuals to which the plaintiff is comparing himself dealt with the same supervisor, were subject to the same standards and were engaged in the same conduct "without such differentiating or mitigating circumstances that would distinguish their conduct of the employer's treatment of them." *Mitchell*, 964 F.2d at 583.

If the plaintiff presents a prima facie case of unlawful discrimination, the burden of production shifts to the employer to articulate a legitimate, non-discriminatory reason for the employment decision. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. Once the employer proffers evidence sufficient to carry this burden, the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the legitimate reasons offered by the employer were merely a pretext for a unlawful discrimination. *Ang*, 932 F.2d at 548. To establish that the employer's stated reason is merely a pretext, the plaintiff must show by a preponderance of the evidence that the employer's reason is false and that discrimination was the real reason for the decision. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 517, 113 S.Ct. 2742, 2753, 125 L.Ed.2d 407 (1993).

■ As an alternate theory of recovery, the plaintiff may attempt to prove intentional discrimination by presenting credible, direct evidence of discriminatory intent on the part of the decision-maker. *Terbovitz v. Fiscal Court of Adair County,* 825 F.2d 111, 114–15 (6th Cir.1987). To establish a claim of intentional discrimination, the plaintiff must show (1) that he was a member of a protected class, (2) he was discharged, and (3) the person responsible for the termination decision was (a) predisposed to discriminate against persons in the protected class and (b) actually acted on that predisposition in the discharge decision. *See Thomas v. Hoyt, Brumm & Link, Inc.,* 910 F.Supp. 1280 (E.D.Mich.1994) (slip opinion).

■ As the facts in this case clearly demonstrate, Perkins has failed to allege facts sufficient to establish a prima facie case of unlawful discrimination. Although he comfortably fits the definition of a protected party under Title VII, was clearly subject to an adverse employment action, and has offered evidence to prove that he was qualified for the job, Perkins has failed to submit any evidence that he was treated differently than similarly situated non-minority employees.

■ Even assuming that Perkins has met his initial burden, his claim should be dismissed because he has offered no evidence to rebut the University's clearly non-discriminatory justification for Perkins's discharge. Perkins admitted to violations of the terms of his employment and was terminated as a result of a finding of "gross misfeasance" after a hearing. There is utterly no evidence to suggest that Perkins's termination was a mere pretext for discrimination.

Moreover, there is no evidence that Cunningham was predisposed to discriminate against minorities or that he acted on any such predisposition in deciding to terminate Perkins. To the contrary, the unrebutted evidence indicates that Perkins was terminated because Cunningham and the University concluded that he was guilty of gross misfeasance, not because he is black. Title VII simply does not provide a remedy for that. Perkins's Title VII claim must be dismissed.

*ORDER*

Therefore, it is hereby **ORDERED** that the defendant's motion for summary judgment is **GRANTED.**

**IT IS FURTHER ORDERED** that the plaintiff, Marvin Perkins, take nothing in this action against the defendant and that his February 15, 1996 complaint be **DISMISSED** in its entirety with prejudice.

**SO ORDERED.**

*JUDGMENT*

This action came before this court, the Honorable Paul V. Gadola, District Judge presiding, and the issues having been fully presented and the court being fully advised in the premises, and a decision having been duly rendered,

**IT IS HEREBY ORDERED AND ADJUDGED** that the plaintiff, Marvin Perkins, take nothing in this action against the defendant, the Regents of the University of Michigan, and that the claims contained in his February 15, 1994 complaint be **DISMISSED** with prejudice.

**IT IS FURTHER ORDERED** that the clerk of the court serve a copy of this judgment by United States mail on counsel for the parties named in the caption above.

**SO ORDERED.**