Marquita PALMER, Plaintiff–Appellant,

v.

CIRCUIT COURT OF COOK COUNTY,
ILLINOIS, Defendant–Appellee.

No. 95–3659.

United States Court of Appeals,
Seventh Circuit.

Submitted May 22, 1997.

Decided June 26, 1997.

Marquita Palmer (Submitted), Chicago, IL, for Plaintiff–Appellant.

A. Benjamin Goldgar, Office of the Attorney General, Civil Appeals Division, Chicago, IL, Robin R. Shartiag, Circuit Court of Cook County, Legal Research Division, Chicago, IL, Margaret Kostopulos, Office of the Chief Judge, Chicago, IL, for Defendant–Appellee.

Before POSNER, Chief Judge, and CUMMINGS and BAUER, Circuit Judges.

POSNER, Chief Judge.

The application of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.*, to persons suffering from mental illness presents difficult issues illustrated by this case in which the district judge granted summary judgment for the Circuit Court of Cook County. The court employed the plaintiff, Marquita Palmer, as a social service caseworker, and she was doing fine until Clara Johnson became her supervisor. Shortly afterward, Palmer had a falling out with another worker, Nicki Lazzaro, who Palmer thought had decided to become friends with Johnson rather than with her. Palmer abused Lazzaro verbally and eventually threatened to "kick her ass" and "throw her out of her window," whereupon Johnson sus-

pended Palmer for ten days. When she returned to work, she told Johnson to "go to hell" and was suspended for another seven days, then transferred to another location of the court, where she worked for six months without incident—until a very minor tiff with Johnson sent her into a tailspin. She became convinced that Johnson was trying to orchestrate a case against her and sought psychiatric help. Diagnosed as having major depression and delusional (paranoid) disorder, she was fired after making a series of phone calls from her home to the office in which she accused Johnson of harassing her and said, "I'm ready to kill her. I don't know what I'll do. Her ass is mine. She needs her ass kicked and I'm going to do it. . . . I want Clara bad and I want her dead." One of the calls was to Johnson herself and in it Palmer said, "Your ass is mine, bitch." Palmer told another worker that Johnson would be "better off dead."

The district judge determined, as a matter of law, that Palmer's depression and paranoia were not disabling because she testified in her deposition that she had never had any problems at work before Clara Johnson became her supervisor. This meant, the judge thought, that Palmer had merely had "a personality conflict with her supervisor, Clara Johnson, and her co-worker, Nicki Lazzaro—although one which caused her to suffer anxiety and depression to an apparently significant degree."

■■■ The judge was certainly correct that a personality conflict with a supervisor or coworker does not establish a disability within the meaning of the disability law, *Stewart v. County of Brown*, 86 F.3d 107, 111 (7th Cir.1996), even if it produces anxiety and depression, as such conflicts often do. Such a conflict is not disabling; at most it requires the worker to get a new job. But if a personality conflict triggers a serious mental illness that is in turn disabling, the fact that the trigger was not itself a disabling illness is no defense. Schizophrenia and other psychoses are frequently triggered by minor accidents or other sources of normal stress. Before then the individual seemed perfectly normal; after that he may be incapable of productive employment for the rest of his life. E.g., *Lancaster v. Norfolk & Western R.R.*, 773 F.2d 807, 822–23 (7th Cir.1985); *Steinhauser v. Hertz Corp.*, 421 F.2d 1169, 1174 (2d Cir.1970); cf. *Pierce v. Southern Pacific Transportation Co.*, 823 F.2d 1366, 1372 n. 2 (9th Cir.1987). (Palmer's paranoid delusions concerning her supervisor are typical symptoms of schizophrenia, although her psychiatrist did not use the term.) Psychotic episodes are not certain to recur, and if they don't the psychosis would not be disabling. Cf. *Vande Zande v. Wisconsin Dept. of Administration*, 44 F.3d 538, 544 (7th Cir.1995). Our only point is to distinguish between the nondisabling trigger of a disabling mental illness and the mental illness itself. On the record compiled in the district court, it is not possible to negate the inference that Palmer has in fact a disabling mental illness.

■■■ But the judgment of the district court must still be affirmed. There is no evidence that Palmer was fired because of her mental illness. She was fired because she threatened to kill another employee. The cause of the threat was, we may assume, her mental illness—as when Hamlet said, apologizing to Laertes, "Was't Hamlet wrong'd Laertes? Never Hamlet./ If Hamlet from himself be ta'en away,/ And when he's not himself does wrong Laertes,/ Then Hamlet does it not; Hamlet denies it./ Who does it then? His madness." *Hamlet*, Act V, sc. ii, ll. 229–233. But if an employer fires an employee because of the employee's unacceptable behavior, the fact that that behavior was precipitated by a mental illness does not present an issue under the Americans with Disabilities Act. *Martinson v. Kinney Shoe Corp.*, 104 F.3d 683, 686 n. 3 (4th Cir.1997); *Newland v. Dalton*, 81 F.3d 904, 906 (9th Cir.1996); *Little v. FBI*, 1 F.3d 255 (4th Cir.1993). The Act does not require an employer to retain a potentially violent employee. Such a requirement would place the employer on a razor's edge—in jeopardy of violating the Act if it fired such an employee, yet in jeopardy of being deemed negligent if it retained him and he hurt someone. The Act protects only "qualified" employees, that is, employees qualified to do the job for which they were hired; and threatening other employees disqualifies one. *EEOC v. Amego, Inc.*, 110 F.3d 135 (1st Cir.1997); *John-*

*son v. New York Hospital,* 96 F.3d 33 (2d Cir.1996) (per curiam); *Williams v. Widnall,* 79 F.3d 1003, 1006 (10th Cir.1996); *Crawford v. Runyon,* 79 F.3d 743 (8th Cir.1996); *Pesterfield v. TVA,* 941 F.2d 437, 442 (6th Cir. 1991); cf. *Ward v. Procter & Gamble Paper Products Co.,* 111 F.3d 558, 560 (8th Cir. 1997).

■ It is true that an employer has a statutory duty to make a "reasonable accommodation" to an employee's disability, that is, an adjustment in working conditions to enable the employee to overcome his disability, if the employer can do this without "undue hardship." 42 U.S.C. § 12112(b)(5)(A). But we cannot believe that this duty runs in favor of employees who commit or threaten to commit violent acts. See *Williams v. Widnall,* supra, 79 F.3d at 1006; *Husowitz v. Runyon,* 942 F.Supp. 822, 834–35 (E.D.N.Y. 1996); *Battle v. Department of Transportation,* 63 M.S.P.R. 403, 409–10 (Merit Systems Protection Bd.1994). The retention of such an employee would cause justifiable anxiety to coworkers and supervisors. It would be unreasonable to demand of the employer either that it force its employees to put up with this or that it station guards to prevent the mentally disturbed employee from getting out of hand. So clear is this that we do not think a remand is necessary to explore the possibilities of accommodation.

AFFIRMED.