Richard A. SULLIVAN, Plaintiff,

v.

RIVER VALLEY SCHOOL DISTRICT, a Michigan corporation, and Charles O. Williams, Superintendent, individually and in his official capacity, Defendants.

No. 4:97–CV–54.

United States District Court,
W.D. Michigan,
Southern Division.

Sept. 8, 1998.

Robert A. Yingst, Boothby & Yingst, Berrien Springs, MI, for Richard A. Sullivan, plaintiff.

Timothy R. Winship, C. George Johnson, Thrun, Maatsch & Nordberg, PC, Lansing, MI, for River Valley School District, and Charles O. Williams, defendants.

## OPINION

ROBERT HOLMES BELL, District Judge.

This is another chapter in a long history of litigation by Plaintiff Richard A. Sullivan against the River Valley School District.[1] In this action, Plaintiff has sued the River Valley School District and its Superintendent, Charles O. Williams, for violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* and the Michigan Handicappers Civil Rights Act ("MHCRA"), M.C.L.A. § 37.1101 *et seq.* This matter is before the Court on Defendants' motion for summary judgment.

**1.** Plaintiff has filed three suits in the Berrien County Circuit Court that are tangentially related to the issues in this case. In the first action, *Sullivan v. River Valley School District,* No. 181913, Plaintiff claimed that the School Board defamed him after he refused to pay union dues. The Court of Appeals affirmed the Circuit Court's dismissal of the case. The second action, *Sullivan v. Williams and Onkka,* No. 96-1652-NO-T,

### I.

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. In evaluating a motion for summary judgment the Court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). If Defendants carry their burden of showing there is an absence of evidence to support a claim then Plaintiff must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In determining a motion for summary judgment the court views the evidence in the light most favorable to the opposing party and draws all justifiable inferences in his favor. *Morales v. American Honda Motor Co.,* 71 F.3d 531, 535 (6th Cir.1995). Nevertheless, the mere existence of a scintilla of evidence in support of Plaintiff's position is not sufficient to create a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The proper inquiry is whether the evidence is such that a reasonable jury could return a verdict for Plaintiff. *Id. See generally, Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1476–80 (6th Cir.1989).

### II.

Richard A. Sullivan has been a tenured school teacher with the River Valley School District since 1977. He taught physical education, math and study skills classes. Until

was filed April 16, 1996, and was dismissed on summary disposition on April 8, 1997. Defendants have not disclosed what issues were raised in that suit. That suit is on appeal. In the third action, *Sullivan v. River Valley School District and Williams,* No. 96-4019-NO-H, Plaintiff purportedly asserted claims identical to those asserted in this case, but that case was voluntarily dismissed.

1995 he received satisfactory evaluations and was never reprimanded or disciplined.

Plaintiff's disputes with the School Board began in 1990 when he filed a grievance after an unsuccessful bid for a coaching position. His grievance was denied and he withdrew his membership in the union. For the next couple of years there were disputes over Plaintiff's failure to pay the required union representation fee.

In March 1995 Mr. Degner and Mr. Zech evaluated Sullivan's performance. They gave him unsatisfactory performance ratings in the areas of teacher-staff relationships and adherence to administrative policies. The evaluators commented that they were concerned that Sullivan's ongoing conflicts with the union, administration and staff had isolated him and dominated his focus, "taking energy away from his teaching effectiveness." They further commented that he "must improve human relations skills within the district."

Defendant Williams sent Dr. Onkka, a psychologist, some of Mr. Sullivan's letters, claims and grievances from 1992 through 1995, and requested an informal assessment of Mr. Sullivan's fitness as a teacher. By letter dated April 14, 1995, Dr. Onkka advised that Dr. Williams should consider a more formal assessment of Mr. Sullivan's personality to determine his fitness for his job. Dr. Onkka found that a principal theme emerging from the materials was a pattern of disruptiveness and manipulativeness. Dr. Onkka did not believe that Mr. Sullivan posed a threat of violence, but given the pattern of suspiciousness and distrust, Mr. Sullivan appeared to be struggling with a possible psychiatric disorder which warranted further investigation.

On April 27, 1995, Dr. Williams notified Mr. Sullivan that he was suspended with pay pending a decision by the Board on Dr. Williams' recommendation that Plaintiff be required to have a physical and mental examination to determine whether an involuntary sick leave was warranted. At a hearing on May 8 the Board voted to accept Dr. Williams' recommendation, and ordered Plaintiff to submit to physical and mental examinations. Plaintiff was present at the meeting with counsel, but no discussion or questions were allowed.

In June 1995 Dr. Williams filed tenure charges against Mr. Sullivan alleging that Mr. Sullivan exercised poor professional judgment and engaged in acts of misconduct and insubordination by: 1) writing a letter to a student that was contemptuous of a faculty sponsor and contained inappropriate, contemptuous and cynical remarks; 2) disclosing confidential student record information; 3) failing to report for meetings with the Superintendent; 4) leaving the school building without authorization; 5) failing to comply with the Superintendent's directives to turn over his grade book and lesson plan book; 6) failing to comply with the Board's directives to have a physical and mental examination; 7) failing to comply with the Superintendent's directive that he make arrangements to review charges; 8) engaging in disruptive and abusive behavior at a meeting of the Board of Education; 9) threatening members of the Board; and 10) refusing to sign his evaluation and individualized development plan.

On July 24, 1995, the School Board determined that Plaintiff's conduct constituted just cause for his discharge from employment.

Plaintiff appealed the Board's decision to the Michigan State Tenure Commission ("STC") contesting the factual basis for the charges and alleging that the Defendants' actions violated the Teachers' Tenure Act, the United States and Michigan Constitutions, the Collective Bargaining Agreement, and the Open Meetings Act.

A hearing was held before the STC. By a decision dated May 23, 1996, the STC declined to discharge Sullivan, but imposed a three-year unpaid suspension against Plaintiff, and required that before returning to teaching in the 1998–99 school year he comply with the Board's directive to undergo physical and mental examinations with the designated doctors at the Board's expense. Plaintiff's appeal of his suspension is pending before the State Court of Appeals.

Plaintiff filed charges of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Michigan Department of Civil Rights. On April 3, 1997,

the Department of Justice, Civil Rights Division, sent Plaintiff a right to sue letter. Plaintiff timely filed this action against the School District and the former Superintendent alleging disability discrimination and retaliation under the ADA and the MHCRA. Defendants have filed a motion for summary judgment.

## III.

Defendants contend that the instant dispute involves issues which should have been presented to and decided by the Michigan State Tenure Commission ("STC"), and that this action must accordingly be dismissed under the doctrine of res judicata.

■ Agency proceedings can be res judicata in a later judicial proceeding if the parties had a full and fair opportunity to litigate the issue before the agency. *Kremer v. Chemical Construction Co.*, 456 U.S. 461, 480–81, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982); *United States v. Utah Construction & Mining Co.*, 384 U.S. 394, 422, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966). Res judicata applies when "the issues raised in the subsequent case were either resolved in the prior case or, through the exercise of reasonable diligence, might have been raised and resolved in the prior case." *Perkins v. Regents of Univ. of Michigan*, 934 F.Supp. 857, 862 (E.D.Mich.1996). The Teachers Tenure Act requires a teacher to file a claim of appeal with the STC no later than 20 days after receipt of the controlling board's decision. M.C.L.A. § 38.104(1); M.S.A. § 15.2004(1). A party seeking to file an employment discrimination claim under the ADA must follow the administrative procedures set forth in Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(e) ("Title VII"). *See* 42 U.S.C. § 12117. Title VII requires an aggrieved party to file, within 180 days of the alleged discriminatory practice, a charge with the EEOC and receive a "right to sue" letter before bringing an action against "the respondent named in charge." 42 U.S.C. § 2000e–5. *See Dao v. Auchan Hypermarket*, 96 F.3d 787, 789 (5th Cir.1996); *Schmitt v.*

*Beverly Health and Rehabilitation Services, Inc.*, 962 F.Supp. 1379, 1383 (D.Kan.1997); *Ditzel v. University of Medicine and Dentistry of New Jersey*, 962 F.Supp. 595, 602 (D.N.J.1997).

■ In light of the exhaustion requirements under the ADA, the Court finds that Plaintiff did not have a full and fair opportunity to litigate the disability discrimination claim before the STC. Accordingly, Plaintiff's action before the STC does not preclude him from filing his ADA action in this Court.

## IV.

Defendants argue, in the alternative, that they are entitled to summary judgment because Plaintiff cannot make out a case of disability discrimination.

■ The ADA prohibits an employer from discriminating "against a qualified individual with a disability because of the disability of such individual." 42 U.S.C. § 12112(a). In a case such as this, where the plaintiff has no direct evidence of disability discrimination and the employer disclaims reliance on the plaintiff's disability, the plaintiff may attempt to establish his or her claim indirectly through the burden shifting method borrowed from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), by establishing a prima facie case of discrimination and shifting the burden to the employer to offer a legitimate, nondiscriminatory reason for its action. *Monette v. Electronic Data Sys. Corp.*, 90 F.3d 1173, 1184–85 (6th Cir.1996).[2]

■ To establish a prima facie case of disability discrimination, Plaintiff must show:
(1) that [he] is a disabled person within the meaning of the Act, (2) that [he] is qualified to perform the essential functions of [his] job with or without reasonable accommodation, and (3) that [he] suffered an adverse employment decision because of [his] disability.

*McKay v. Toyota Motor Mfg., U.S.A., Inc.*, 110 F.3d 369, 371 (6th Cir.1997).

---

2. Claims of handicap discrimination under Michigan law essentially track those under federal law. Therefore, this Court's resolution of Plain-

tiff's claim under the ADA also dispenses with his claim under the Michigan Handicappers' Civil Rights Act. *See Monette*, 90 F.3d at 1178 n. 3.

Defendants contend that Plaintiff cannot make out a prima facie case under the ADA because he is not "disabled" within the meaning of the ADA. The ADA defines "disability" as:

> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment.

42 U.S.C. § 12102(2). Major life activities include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i).

Plaintiff denies that he is disabled. He contends, however, that he was discriminated against because of a perception that he had a mental impairment. He contends that Dr. Williams created the perception that Plaintiff was unstable by sharing Dr. Onkka's report with the Board.

Defendant Williams denies that he perceived Plaintiff as mentally impaired. Rather, he was concerned that Plaintiff *might* be mentally unstable, and wanted a psychological exam to enable him to determine whether Plaintiff was fit to continue teaching.

In *Kocsis v. Multi–Care Management, Inc.*, 97 F.3d 876 (6th Cir.1996), the plaintiff argued that the employer perceived her as disabled. In support of this argument she presented evidence that her employer knew she was having health problems, noted that these health problems were affecting her job performance, and offered her a paid medical leave of absence. The Sixth Circuit rejected Plaintiff's argument: "While the defendant may have perceived that Kocsis' health problems were adversely affecting her job performance, there is no evidence that defendant regarded Kocsis as being unable to care for herself or to perform all of the duties of her job." *Id.* at 885.

■ In *Cody v. CIGNA Healthcare of St. Louis, Inc.*, 139 F.3d 595 (8th Cir.1998), the plaintiff argued that she was viewed as disabled because her employer offered her paid medical leave and required that she see a psychologist before returning to work. The Eighth Circuit rejected this argument:

> An employer's request for a mental evaluation is not inappropriate if it is not obvious that an employee suffers from a disability. A request for an evaluation is not equivalent to treatment of the employee as though she were substantially impaired. Employers need to be able to use reasonable means to ascertain the cause of troubling behavior without exposing themselves to ADA claims under §§ 12112(a) and 12102(2)(C).

*Id.* at 599 (citations omitted). The employer's "mere knowledge of behavior that could be associated with an impairment" does not show that the employer treated the employee as if the employee were disabled. *Id.*

In *Kvintus v. R.L. Polk & Co.*, 3 F.Supp.2d 788 (E.D.Mich.1998), co-workers described the plaintiff as "disorganized," "delusional" and "confrontational." Her employer contacted an industrial psychologist to ascertain how to deal with him. Defendant ultimately offered plaintiff the opportunity to take a paid leave of absence. The plaintiff's position at the company was eliminated while he was on leave, and he filed an action under the ADA for disability discrimination. The plaintiff argued that her employer's perception of disability should be inferred from its offer to plaintiff of a paid medical disability leave. The district court declined to make that inference. "To hold otherwise would unnecessarily inhibit employers from any inquiry regarding the status of behavior on the part of an employee that an employer may perceive as inappropriate for the employment environment." *Id.* at 796.

■ It is clear from the preceding authorities that Defendants' concern for Plaintiff's mental condition and their request for further inquiry into Plaintiff's mental condition, are not a sufficient basis from which to infer that they perceived Plaintiff as disabled. Defendants needed to ascertain the cause of Plaintiff's troubling behavior. Plaintiff has failed to show that he was disabled or perceived as disabled. Plaintiff has accordingly failed to meet his burden of establishing a prima facie case of disability discrimination. On this basis alone, Defendants are entitled to summary judgment.

Even if Plaintiff could establish that Defendants perceived him as having a disability, his ADA claim would nevertheless fail because he cannot show that Defendants' request that he undergo psychological examination was discriminatory.

Once an individual has been hired, the ADA provides as follows:

A covered entity shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature and extent of the disability, unless such examination is shown to be job-related and consistent with business necessity.

42 U.S.C. § 12112(d)(4)(A).

In applying this section the court must focus on "the nature of job-relatedness and what constitutes a business necessity." *E.E.O.C. v. Prevo's Family Market, Inc.,* 135 F.3d 1089, 1094 (6th Cir.1998). "The interpretative guidelines to the ADA explain that the statute was intended to prevent against 'medical tests and inquiries that do not serve a legitimate business purpose.'" *Id.* at 1094 (quoting 29 C.F.R. § 1630.13(b) App. (1996)). One of the reasons Congress placed limits on an employer's ability to require employees to undergo medical examination was "the unwanted exposure of the employee's disability and the stigma it may carry." *Prevo's Market,* 135 F.3d at 1094 n. 8.

Plaintiff contends there was no factual support to justify Defendants' demand for a psychological examination. Plaintiff contends there was no business necessity for a mental examination and that the mental exam was merely an attempt to oust plaintiff due to the administration's animosity toward him.

The Collective Bargaining Agreement ("CBA") between the River Valley School District and the River Valley Education Association specifically provides in Article IX(1)(e) that on recommendation of the Superintendent, the Board may require a teacher to undergo a physical or mental examination at the Board's expense. · Plaintiff correctly argues that contract language can-not abrogate rights under the ADA or the MHCRA. *See Adkerson v. MK–Ferguson Co.,* 191 Mich.App. 129, 139, 477 N.W.2d 465 (1991)(although union contract included requirement that employees pass psychological assessment before being granted unescorted access at a nuclear power plant, plaintiff had an independent, nonnegotiable right not to be discriminated against on the basis of handicap), *app. den.,* 441 Mich. 877, 494 N.W.2d 745 (1992). Nevertheless, "when health problems have had a substantial and injurious impact on an employee's job performance, the employer can require the employee to undergo a physical examination designed to determine his or her ability to work, even if the examination might disclose whether the employee is disabled or the extent of any disability." *Yin v. State of California,* 95 F.3d 864, 868 (9th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 955, 136 L.Ed.2d 842 (1997).

Defendants' determination that Plaintiff should undergo a psychological examination in order to determine whether he was competent to teach was preceded by certain actions by Plaintiff that were of legitimate concern to the Board. The record clearly demonstrates that Defendants had good cause for trying to determine whether Plaintiff was fit to teach. Defendants had a legitimate concern that he was undergoing a breakdown of his interpersonal skills. He had shown poor judgment in his communications with students, he had disclosed confidential student records, he had resisted or ignored numerous legitimate directives of his supervisor, and had threatened Board members. Plaintiff does not dispute these underlying allegations. Moreover, Defendants did not rely upon their perception alone. Prior to requesting the psychological examination they sought outside input from a psychologist who suggested that further examination was in order. Defendants had a right and a duty to look into Plaintiff's ability to do his job.

There is no question of fact that the physical and mental examinations furthered the school's legitimate business purpose and business necessity. Defendants are entitled to summary judgment because Plaintiff has

not presented evidence to make out a prima facie case of discrimination under the ADA.

Assuming Plaintiff could make out a prima facie case of discrimination on the basis of a perceived disability, the burden would then shift to Defendants to articulate a legitimate, nondiscriminatory reason for the adverse employment action.

■ Defendants have met their burden of coming forward with evidence of a legitimate, nondiscriminatory reason for their actions. They have shown that Plaintiff was suspended not because of his "disability," but because of numerous instances of misconduct and insubordination, including his refusal to comply with the legitimate directive of the Board that he undergo an examination to confirm that he was not impaired.

■ Having a disability, or a perceived disability, does not insulate an individual from adverse employment actions. The conduct/disability distinction was recognized by the Sixth Circuit in *Maddox v. University of Tennessee*, 62 F.3d 843 (6th Cir.1995). In *Maddox* the plaintiff argued that when the university dismissed him on the basis of conduct allegedly caused by his alcoholism, it was the same as if the university acted on the basis of alcoholism itself. The Sixth Circuit rejected this argument. The court held that it was proper to focus on "the distinction between discharging someone for unacceptable misconduct and discharging someone because of the disability." *Id.* at 847.

An employer "must be permitted to terminate its employees on account of egregious misconduct, irrespective of whether the employee is handicapped." *Little v. F.B.I.*, 1 F.3d 255, 259 (4th Cir.1993)(quoted in *Maddox*, 62 F.3d at 847). "[I]f an employer fires an employee because of the employee's unacceptable behavior, the fact that that behavior was precipitated by a mental illness does not present an issue under the Americans with Disabilities Act." *Palmer v. Circuit Court of Cook County*, 117 F.3d 351, 352 (7th Cir.

1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 893, 139 L.Ed.2d 879 (1998).[3]

■ Once Defendants articulate a legitimate, nondiscriminatory reason for the adverse employment action, the burden shifts back to Plaintiff to show that the reason given is pretextual. Plaintiff argues that during the 1994–95 school year Defendant Williams began a campaign to oust Plaintiff from the school district. According to Plaintiff, it follows that the reasons given by Defendants for the suspension were pretextual. As noted above, Plaintiff has not come forward with any evidence challenging the allegations contained in Dr. Williams' complaint to the Board. Plaintiff has not shown the existence of a question of fact regarding the reasons for his suspension. Accordingly, for yet another reason, Defendants are entitled to summary judgment.

For all the reasons stated herein, the Court finds that Defendants are entitled to summary judgment on Plaintiff's complaint against them.

An order and judgment consistent with this opinion will be entered.

### ORDER AND JUDGMENT

In accordance with the opinion entered this date,

**IT IS HEREBY ORDERED** that Defendants' motion for summary judgment (Docket # 20) is **GRANTED**.

**IT IS FURTHER ORDERED** that **JUDGMENT** is entered in favor of the Defendants and this action is **DISMISSED** in its entirety.

---

**3.** There is undisputed evidence in this case that Plaintiff threatened members of the Board. As noted in *Palmer*, the ADA protects only "quali-

fied" employees, "and threatening other employees disqualifies one." 117 F.3d at 352.