NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0590n.06

No. 25-5241

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Dec 19, 2025
KELLY L. STEPHENS, Clerk

DERYCK HUELETT,

      Plaintiff-Appellant,

v.

LOUISVILLE PAVING COMPANY, INC.,

      Defendant-Appellee.

)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE WESTERN
DISTRICT OF KENTUCKY

OPINION

Before: CLAY, KETHLEDGE, and LARSEN, Circuit Judges.

LARSEN, Circuit Judge. Deryck Huelett was fired from his construction job following an incident on a worksite. Huelett sued his employer, Louisville Paving Company, claiming disability discrimination. The district court granted summary judgment to the employer. Huelett appeals. For the reasons given below, we AFFIRM.

I.

For approximately seven months, Deryck Huelett worked for Louisville Paving Company as a construction worker. On May 2, 2022, he drove his car to a jobsite. As was his custom, Huelett had firearms in his vehicle for personal safety.

On his lunch break, Huelett returned to his car, where he spoke to his wife on the phone. During the call, the couple argued about finances. His wife wanted him to "do something with [his] 401(k)," but he "couldn't understand how to do it." R. 24-1, Huelett Dep., PageID 188. So Huelett called Louisville Paving's HR Specialist, Clay Hoppe, for assistance. During their call, Hoppe noticed that Huelett was breathing heavily and seemed distressed. Hoppe was concerned

about Huelett's well-being, so he contacted Alex Keller, a superintendent at the company. Hoppe suggested that someone at the jobsite check on Huelett. Keller asked Matt Lewis, a laborer on-site, to check on Huelett.

Lewis found Huelett in his car. He was "emotionally distressed," "hyperventilating" and "crying." R. 24-2, Lewis Dep., PageID 219. Lewis attempted to calm him down. During their interaction, Huelett said, "Maybe it would be better if I was not around" and "[M]aybe I should just end it." *Id.* at 220. Huelett then grabbed one of the handguns he kept in the car. Lewis quickly reached into the car; pinned Huelett's gun-hand down on the center console; and told Huelett to drop the gun. After thirty to forty seconds, Huelett complied. Lewis grabbed the handgun and removed it from the vehicle.

At some point during this interaction, Blake Cundiff, a foreman, and Louisville Paving's safety specialist James Bentley arrived on scene. Lewis and Cundiff secured the handgun, and Cundiff called Emergency Medical Services (EMS) to check on Huelett. EMS determined that Huelett had an elevated heart rate and encouraged him to go to the hospital for further evaluation in light of his comments about "end[ing] it." R. 24-6, EMS Report, PageID 256. Huelett was reluctant, but he eventually agreed. Before departing, Huelett gave Bentley his car keys so Bentley could move Huelett's vehicle inside a secured gate. Later that day, Bentley met Huelett's wife off-site and gave her Huelett's guns.

Huelett was evaluated at the hospital, where he told doctors that he had experienced a panic attack and said "something about 'ending it.'" R. 40, Dct. Opn., PageID 733 (quoting R. 24-8, Emergency Department Notes, PageID 267–68). He was discharged from the hospital later that evening.

Following the incident, Bentley completed a safety incident report, recounting the events, and sent it to Senior Vice President of Human Resources, Kurt Krug. The next day, Krug terminated Huelett's employment, citing the fact that Huelett had a handgun on the premises and concerns that Huelett would harm himself or his coworkers.

This wasn't the first time that Huelett had suffered a panic attack while employed by Louisville Paving. A few months earlier, Huelett had a panic attack while in an excavator moving dirt. His supervisor at the time, Justin Flowers, observed him suffering the attack. Flowers called Lisa Neal, a team safety member, to come out to address potential safety concerns. Huelett was instructed to go home and come back the next day.

According to Huelett, his panic attacks occur between one and six times a year. During an attack, Huelett experiences jabbing pain and shortness of breath. But he does not take medication to prevent or treat these attacks. Other than one interaction with Neal, there is no indication in the record that Huelett discussed his panic-attack condition with anyone at Louisville Paving.

Following his termination, Huelett sued Louisville Paving. He brought multiple claims, including disability discrimination in violation of the Americans with Disabilities Act (ADA) and the Kentucky Civil Rights Act (KCRA). Louisville Paving moved for summary judgment, which the district court granted in its favor on all claims. Huelett appeals, challenging only the court's ruling on his disability discrimination claim.[1]

---

[1] Louisville Paving claims that Huelett has appealed only his claim for discrimination under the ADA, and not under the KCRA. That is not clear to us. But even if we interpret Huelett's briefs to preserve a claim under the KCRA, it fails for the reasons set forth in the analysis below. Because the two statutes use similar language, we analyze claims for disability discrimination under the KCRA using the ADA framework. *Brohm v. JH Props., Inc.*, 149 F.3d 517, 520 (6th Cir. 1998). We note, however, that the KCRA still follows the ADA's pre-amendment definition of "disability," which is more onerous for Huelett. *See Larison v. Home of the Innocents*, 551 S.W.3d 36, 43 (Ky. Ct. App. 2018) ("[T]he KCRA retains the [ADA's] former definition of disability, prior to the 2008 Amendments of the federal law." (citation modified)).

II.

We review de novo the district court's grant of summary judgment. *Franklin Am. Mortg. Co. v. Univ. Nat'l Bank of Lawrence*, 910 F.3d 270, 275 (6th Cir. 2018). Summary judgment is appropriate when the movant shows that "'there is no genuine issue as to any material fact' and 'the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(a)). We view the facts presented in the "light most favorable to the party against whom summary judgment was entered."[2] *Id.* (citation omitted).

The ADA provides, in relevant part, that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to . . . [the] discharge of employees." 42 U.S.C. § 12112(a). To prove disability discrimination, a plaintiff must show that, but for his disability, the employer would not have taken an adverse action against him.[3] *Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 321 (6th Cir. 2012) (en banc). A plaintiff may show this through direct or indirect evidence. *See Talley v. Fam. Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1105 (6th Cir. 2008).

---

[2] We note, however, that portions of Huelett's affidavit cannot be considered. Huelett filed the affidavit after Louisville Paving filed its motion for summary judgment. To the extent that statements in his affidavit conflict with his prior sworn statements, the statements in his affidavit cannot create a factual dispute sufficient to defeat a motion for summary judgment. *See Lanier v. Bryant*, 332 F.3d 999, 1004 (6th Cir. 2003).

[3] The district court treated Huelett's firing as the sole adverse action. In his reply brief on appeal, Huelett asks us to take account of "the other adverse actions Huelett suffered—removal from the jobsite, being compelled to accept unwanted medical care, and intrusion into his car and property." Reply Br. at 7. He asserts, without any developed argument, that under the Supreme Court's recent opinion in *Muldrow v. City of St. Louis*, 601 U.S. 346, 354–360 (2024), these count as adverse actions and "deserve review." Reply Br. at 7. Although Huelett made that argument before the district court, he does not develop it on appeal, suggesting in passing only that Louisville Paving's removing Huelett from the worksite, pressuring him to receive medical care, and refusing to pay his medical bills were cognizable adverse actions. Because this argument is "adverted to in a perfunctory manner," we do not address it. *Doe v. Mich. State Univ.*, 989 F.3d 418, 425 (6th Cir. 2021) (quoting *United States v. Johnson*, 440 F.3d 832 (6th Cir. 2006)).

*Direct Evidence.* As direct evidence of discrimination, Huelett points to several comments made by Louisville Paving managers before and after his firing. For example, after the May 2 incident, but before Huelett's termination, Louisville Paving managers exchanged emails. In one, Hunter Strickler said, "This is a tragic situation and my first inclination is to pray for [Huelett] to find help and perspective because mental health is such a challenge for so many." R. 31-9, Exhibit 9. He also noted the importance of "mental health awareness." *Id.* Then, in a May 19 email to Keller, Brad Nollar, and Jason Schmidt, Krug called Huelett's "situation" "really sad" and asked if Huelett was "getting help for himself." R. 30, Resp. to Mot. for Summ. J., PageID 320 (citing R. 31-13, Exhibit 13). Keller responded, "[Huelett] is doing well. However, he still thinks that he doesn't need to seek any professional help for his condition." *Id.* (citing R. 31-13, Exhibit 13).

These statements do not constitute direct evidence of disability discrimination. Direct evidence "proves the existence of a fact without . . . any inferences." *Bledsoe v. Tenn. Valley Auth. Bd. of Dirs.*, 42 F.4th 568, 580 (6th Cir. 2022) (quoting *Willard v. Huntington Ford, Inc.*, 952 F.3d 795, 806 (6th Cir. 2020)). In a discrimination case, that means that the evidence must directly show that "the employer relied upon the plaintiff's disability in making its employment decision." *Bent-Crumbley v. Brennan*, 799 F. App'x 342, 345 (6th Cir. 2020) (citation omitted); *see also Bledsoe*, 42 F.4th at 580–81. "The standard for establishing direct evidence of discrimination is high." *Treadway v. Cal. Prods. Corp.*, 659 F. App'x 201, 207 (6th Cir. 2016); *see also Pelcha v. MW Bancorp, Inc.*, 988 F.3d 318, 325 (6th Cir. 2021). It "essentially requires an admission in some form by the employer that it relied on the disability in making an employment decision." *Coulson v. Goodyear Tire & Rubber Co.*, 31 F. App'x 851, 855 (6th Cir. 2002) (per curiam) (citation omitted). We do not have that here. While Krug, who was involved in these email exchanges, made the final decision to terminate Huelett, none of these statements constitutes

"smoking gun evidence that explains itself." *Pelcha*, 988 F.3d at 324 (citation modified). Rather Louisville Paving colleagues shared their sympathies for Huelett and, although they mentioned mental health and professional help for Huelett's "condition," R. 31-13, Exhibit 13, none of the statements say that Huelett's panic attacks were the reason for his firing. Huelett has not provided direct evidence of discrimination.

*Indirect Evidence.* We turn, then, to Huelett's indirect or circumstantial evidence, which we evaluate using the *McDonnell Douglas* framework.[4] *Hrdlicka v. Gen. Motors, LLC*, 63 F.4th 555, 566 (6th Cir. 2023). Under that framework, a plaintiff must first establish a prima facie case, showing that (1) he "is actually disabled or regarded as having a disability;" (2) he "is otherwise qualified for the position, with or without a reasonable accommodation;" (3) he "suffered adverse action;" (4) his "employer knew or had reason to know of h[is] disability;" and (5) his "position remained open or []he was replaced." *Edwards v. Shelby County*, 159 F.4th 489, 498 (6th Cir. 2025) (citing *Hrdlicka*, 63 F.4th at 566, and *Talley*, 542 F.3d at 1105). If an employee can establish a prima facie case, "the burden shifts to the employer" to show "that there was a legitimate, nondiscriminatory reason for the adverse employment action." *Hrdlicka*, 63 F.4th at 567 (citation omitted). The burden then returns to the employee to demonstrate that the employer's reason was a pretext for disability discrimination. *Id.* We need not decide whether Huelett has established a prima facie case of discrimination. Even assuming that he has, he is unable to show that Louisville Paving's proffered reason for firing him was pretextual.

---

[4] Huelett spends much of his briefing criticizing the *McDonnell Douglas* doctrine, citing recent calls for its reform. *See Ames v. Ohio Dep't of Youth Servs.*, 605 U.S. 303, 319 (2025) (Thomas, J., concurring). But both this court and the Supreme Court have held that the *McDonell Douglas* framework governs disability discrimination cases under the ADA. *See Kellar v. Yunion, Inc.*, 157 F.4th 855, 868 n.2 (6th Cir. 2025); *Raytheon Co. v. Hernandez*, 540 U.S. 44, 53 (2003). And we are bound by those decisions. *See United States v. Elbe*, 774 F.3d 885, 891 (6th Cir. 2014).

Louisville Paving provided a legitimate, nondiscriminatory reason for Huelett's termination—the company's safety concerns stemming from Huelett's handling of a firearm at a worksite. Huelett himself testified that this was the reason Louisville Paving gave for his termination. He said he was told that he "no longer had a job because [he] had a firearm on the premises, and [Louisville Paving] was afraid that [he] was going to shoot [him]self or shoot somebody else." R. 24-1, Huelett Dep., PageID 212. He later confirmed that he was told he was being let go out of "concern that [he was] going to harm [him]self or someone else on the job site." *Id.* at 213. There can be no doubt that threats of violence that jeopardize the safety of employees are a legitimate reason for discipline or termination. *See Green v. Burton Rubber Processing, Inc.*, 30 F. App'x 466, 471 (6th Cir. 2002). And, as the district court concluded, Kentucky law permits an employer "to take disciplinary action" against employees who "handle[]" a firearm at the workplace, except in cases of "self-defense, defense of another, [or] defense of property." R. 40, Dct. Opn., PageID 737 (quoting Ky. Rev. Stat. § 237.106).

Even so, Huelett argues that this wasn't the real reason he was fired; he says he was instead terminated because of Louisville Paving's perception that he had mental health issues amounting to a disability. To show that an employer's proffered reasons are pretextual, an employee generally must show that they "(1) have no basis in fact; (2) did not actually motivate the action; or (3) were insufficient to warrant the action." *Hrdlicka*, 63 F.4th at 569 (quoting *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 285 (6th Cir. 2012)). Huelett appears to ground his claim in the second and third of these categories.

*Inconsistent Reasons.* Huelett first argues that Louisville Paving provided "ever-shifting reasons" for his termination. Reply Br. at 10. We have said that "[a]n employer's changing

rationale for making an adverse employment decision can be evidence of pretext." *Cicero v. Borg-Warner Auto., Inc.*, 280 F.3d 579, 592 (6th Cir. 2002) (citation omitted).

But the record shows that Louisville Paving's reason for termination was consistent. Huelett testified that he was told he "no longer had a job because [he] had a firearm on the premises, and [Louisville Paving] was afraid that [he] was going to shoot [him]self or shoot somebody else." R. 24-1, Huelett Dep., PageID 212. He later confirmed that the reason Louisville Paving gave for his firing was "concern that [he was] going to harm [him]self or someone else on the job site." *Id.* at 213. In written discovery, Louisville Paving said that it dismissed Huelett because he "brandish[ed] a gun and threaten[ed] to harm himself on a construction site," and his "violent behavior placed himself [and others] in danger." R. 31-14, Def.'s Disc. Resps., PageID 576. And Krug, who made the termination decision, repeatedly testified to his understanding that Huelett was "holding" or "waving" a gun at a jobsite, thereby putting himself or others in danger. R. 31-8, Krug Dep., PageID 475, 488–89, 496.

Huelett tries, unsuccessfully, to suggest that Louisville Paving's reasons for his termination have changed over time. He argues that after answering interrogatories, Krug, the "decision maker[,] . . . denied that the alleged suicide threat played a part in the decision." Appellant Br. at 41. But read in context, Krug's statements cannot support the charge. Huelett may be alluding to Krug's deposition, in which he "recall[ed] [Huelett] making a statement while holding the gun, that he was . . . going to end it all." R. 31-8, Krug Dep., PageID 488. When asked whether "that [went] into the decision to terminate him," Krug answered "[n]o." *Id.* But Krug immediately clarified, in response to Huelett's counsel's questioning, that "somebody just on their own holding a gun and saying I'm going to end it all" "*would be*" a "basis for termination." *Id.* at 488–89 (emphasis added). And when asked why, Krug explained: "Because it was threatening and

intimidating." *Id.* at 489. Huelett's counsel returned to this line of questioning later in the deposition, asking "Did anything that [Huelett] said go into your decision to terminate him?" *Id.* at 499. Krug responded, "Yes[,] . . . I'm going to end it all." *Id.* And Krug explained that because Huelett "had a gun in his hand," he understood "end it all" to mean that he was going to "[t]ake his life or the life of others." *Id.* at 500.

Huelett also suggests that Louisville Paving's workplace conduct rules, which appear to ban gun possession on jobsites, either post-dated the events that caused his firing, or were not timely provided to him. Thus, he claims, his possession of a gun could not have been the reason for his termination. But to the extent that the policies purported to ban simple gun possession on a jobsite, they are beside the point. As Huelett himself admitted, Louisville Paving told him he had been dismissed not only for having "a firearm on the premises" but because the company "was afraid that [he] was going to shoot [him]self or shoot somebody else." R. 24-1, Huelett Dep., PageID 212. Krug, the decisionmaker, explained that he arrived at that conclusion because he understood that Huelett had "held" (or "wav[ed]") his firearm, in Lewis's presence, while claiming that he wanted to "end it all." R. 31-8, Krug Dep., PageID 476, 488, 496, 500. Krug considered that conduct unsafe. And an employer does not need a written policy to justify every termination. *Yarberry v. Gregg Appliances, Inc.*, 625 F. App'x 729, 739 (6th Cir. 2015) ("An employer may enforce any conduct rules, even those not found in workplace policies, employee handbooks or other such documents, as long as those policies are job-related and consistent with a business necessity." (citing Equal Emp. Opportunity Comm'n, Enforcement Guidance, The Americans With Disabilities Act: Applying Performance and Conduct Standards to Employees with Disabilities (2008), 2008 WL 4786697, at *13)).

In support of that argument, Huelett additionally contends that immediately preceding the encounter with Lewis, a supervisor observed Huelett's gun resting on the passenger seat of his car and did not react to it. That supervisor's mindset is not probative of Krug's motivations. And, in any event, an unconcerned reaction to the inanimate firearm lying on the seat would not negate the reality that Huelett escalated the danger when he picked the gun up.

Huelett has not created a genuine issue of material fact suggesting that Louisville Paving's reason for dismissing him has shifted over time.

*Disparate Rule-Enforcement.* Huelett next suggests that Louisville Paving's proffered reason for firing him was pretextual because the company treated Lewis, a non-disabled coworker, more favorably than him despite engaging in similar conduct. This claim also fails.

One way for an employee to show that an employer's proffered reason was "insufficient to motivate" a termination, is to show that employees "not in the protected class[] were not fired even though they engaged in substantially identical conduct." *Russell v. Univ. of Toledo*, 537 F.3d 596, 607 (6th Cir. 2008) (citation omitted). "Substantially identical conduct" means "the same conduct without such differentiating or mitigating circumstances that would distinguish [the employees'] conduct or the employer's treatment of them for it." *Id.* (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)).

The conduct Lewis and Huelett engaged in was not "substantially identical." The most that might be said is that each violated a provision of Louisville Paving's Workplace Violence Prevention Policy, which states that "[e]mployees should not place themselves in peril, nor should they attempt to intercede during an incident." R. 31-22, PageID 651. Even so, Huelett's perilous conduct—handling a firearm while making statements suggesting a threat to himself or others—cannot be likened to Lewis's intercession. Lewis, after all, intervened to disarm Huelett. Their

conduct was not "substantially identical," so Huelett has not shown that Louisville Paving treated a non-disabled employee more favorably.

*Expressions of Concern.* Pervading each of Huelett's arguments is the idea that Louisville Paving's proffered justification cannot be believed because, after the worksite incident, members of the management team, including Krug, expressed concern for (or about) Huelett's mental health. But the mere fact that management may have perceived a mental health issue does not show that the perception caused the adverse action. Indeed, an employer may terminate an employee for violating a workplace conduct rule even if the employee's disability is what *caused* the employee to violate the rule. *Macy v. Hopkins Cnty. Sch. Bd. of Educ.*, 484 F.3d 357, 366 (6th Cir. 2007), *abrogated on other grounds by*, *Lewis*, 681 F.3d 312; *Green*, 30 F. App'x at 470 (citing *Palmer v. Cir. Ct. of Cook Cnty.*, 117 F.3d 351, 352 (7th Cir. 1997)). The question the ADA poses is whether the employer would not have fired the employee for violating its safety or conduct standards, if the employee were not disabled (or perceived as so). *See Lockhart v. Marietta City Schs.*, 2021 WL 4810172, at *10–11 (6th Cir. Oct. 15, 2021). Huelett has produced no evidence to suggest that Louisville Paving would not have fired a non-disabled employee who behaved as he did.

Because no genuine issue of material fact exists, the district court correctly awarded summary judgment in favor of Louisville Paving.

\* \* \*

For the reasons stated above, we AFFIRM the judgment of the district court.