COLLINS v BLUE CROSS BLUE SHIELD OF MICHIGAN

Docket No. 200333. Submitted December 3, 1997, at Detroit. Decided March 13, 1998, at 9:05 A.M. Leave to appeal sought.

Irma Collins and Blue Cross Blue Shield of Michigan (BCBSM) submitted to arbitration her claim that BCBSM, in terminating her employment, had discriminated against her on the basis of a psychiatric disorder in violation of the Americans with Disabilities Act (ADA), 42 USC 12101 *et seq.*, and the Michigan Handicappers' Civil Rights Act (HCRA), MCL 37.1101 *et seq.*; MSA 3.550(101) *et seq.* Collins had gone on psychiatric disability. BCBSM, seeking to confirm Collins' continued eligibility for disability benefits, had her evaluated by a psychiatrist other than the one who was treating her. The psychiatrist chosen by BCBSM had reported back to BCBSM that Collins stated that she had thought of killing her immediate supervisor but had decided not to do so when a strike caused the redeployment of the staff in her department. The arbitrator ruled in Collins' favor and ordered Collins reinstated with back pay. The Wayne Circuit Court, J. Phillip Jourdan, J, confirmed the arbitration award. BCBSM appealed.

The Court of Appeals *held*:

1. The arbitration agreement between the parties was not made invalid by a provision that allowed judicial review for errors of law. The provision is consistent with MCL 600.5001 *et seq.*; MSA 27A.5001 *et seq.*, and MCR 3.602, which govern statutory arbitration awards. Under the court rule, a statutory arbitration award may be vacated in limited circumstances, such as when an arbitrator's powers are exceeded. An arbitrator's scope of authority is exceeded when the arbitrator acts in contravention of controlling principles of law.

2. The arbitrator in this case committed an error of law in ruling that Collins' discharge violated the ADA and the HCRA. Collins did not establish a prima facie case under the ADA or the HCRA. The ADA requires a claimant to prove qualification to perform the essential functions of the job, and the HCRA requires a claimant to prove that the claimant's handicap was unrelated to ability to perform the duties of the job or position or was unrelated to the claimant's qualifications for employment. Here, Collins' homicidal ideation left

her unqualified for employment by BCBSM. A discharge for misconduct does not violate the ADA or the HCRA, even where the misconduct is a manifestation of the employee's disability. BCBSM's perception that Collins was a risk to workplace safety, as opposed to any actual instances of Collins endangering the workplace, was sufficient cause for discharge in view of the specific and detailed threat made by Collins. Reasonable accommodation for a disabled or handicapped employee is required of an employer by the ADA and the HCRA only where the employee is qualified for employment.

Circuit court order confirming arbitration award vacated.

1. ARBITRATION — JUDICIAL REVIEW.

A statutory arbitration award may be vacated in limited circumstances, such as where an arbitrator evidences partiality, refuses to hear material evidence, or exceeds powers (MCL 600.5001 *et seq.*; MSA 27A.5001 *et seq.*; MCR 3.602).

2. ARBITRATION — ARBITRATOR'S SCOPE OF AUTHORITY.

An arbitrator's scope of authority is exceeded where the arbitrator acts beyond the material terms of the contract from which authority is drawn, or in contravention of controlling principles of law.

3. CIVIL RIGHTS — AMERICANS WITH DISABILITIES ACT — MICHIGAN HANDICAPPERS' CIVIL RIGHTS ACT — EMPLOYMENT DISCRIMINATION — MISCONDUCT.

A prima facie case of employment discrimination in violation of the Americans with Disabilities Act or the Michigan Handicappers' Civil Rights Act requires a demonstration by the employee of qualification to perform the job; misconduct, even if a manifestation of a disability or handicap, disqualifies an employee such that a discharge for misconduct cannot violate either act (42 USC 12101 *et seq.*; MCL 37.1101 *et seq.*; MSA 3.550[101] *et seq.*).

4. CIVIL RIGHTS — AMERICANS WITH DISABILITIES ACT — MICHIGAN HANDICAPPERS' CIVIL RIGHTS ACT — EMPLOYMENT DISCHARGE — MISCONDUCT — HOMICIDAL THREATS.

An employer's perception of an employee as a risk to workplace safety, formed from a report of specific and homicidal ideation by the employee involving a co-worker by a psychiatrist assigned by the employer to evaluate the employee's continued qualification for disability benefits for a psychiatric condition, provides a sufficient ground for discharge for misconduct; such a discharge does not violate the Americans with Disabilities Act or the Michigan Handicappers' Civil Rights Act (42 USC 12101 *et seq.*; MCL 37.1101 *et seq.*; MSA 3.550[101] *et seq.*).

5. CIVIL RIGHTS — AMERICANS WITH DISABILITIES ACT — MICHIGAN HANDICAP-
    PERS' CIVIL RIGHTS ACT — EMPLOYMENT DISCRIMINATION — REASONABLE
    ACCOMMODATION.

    An employers' duty under the Americans with Disabilities Act and the
    Michigan Handicappers' Civil Rights Act to make reasonable
    accommodations for an employee's disability or handicap extends
    only to those who are qualified for employment, i.e., whose disabil-
    ities or handicaps are unrelated to their abilities to perform their
    jobs (42 USC 12101 *et seq.*; MCL 37.1101 *et seq.*; MSA 3.550[101] *et
    seq.*).

*Nelson S. Chase* and *William L. Fischel*, for the
plaintiff.

*Kienbaum Opperwall Hardy & Pelton, P.L.C.* (by
*Theodore R. Opperwall* and *Noel D. Massie*) (*Frank
W. Jackson*, of Counsel), for the defendant.

Before: HOLBROOK, JR., P.J., and YOUNG and J. M.
BATZER*, JJ.

PER CURIAM. While plaintiff was on psychiatric disa-
bility leave from her employment with defendant,
plaintiff expressed homicidal ideation regarding her
immediate supervisor to a psychiatrist assigned to
evaluate her disability claim. After she returned to
work, plaintiff was terminated as a result of those
statements. Plaintiff claimed discrimination under the
Americans with Disabilities Act (ADA), 42 USC 12101
*et seq.*, and the Michigan Handicappers' Civil Rights
Act (HCRA), MCL 37.1101 *et seq.*; MSA 3.550(101) *et
seq.*The matter was submitted to binding arbitration
and, following a hearing, the arbitrator ruled in plain-
tiff's favor. Eventually, an order confirming the arbi-
trator's ruling was entered by the circuit court.[1]

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] Plaintiff filed an action in state court to enforce the arbitration award.
Defendant answered and filed a counterclaim to vacate the award. A

Defendant now brings this appeal, and we vacate the arbitrator's decision.

I

In 1985, plaintiff began working for defendant as a secretary, and in 1989 she was promoted to administrative analyst. Plaintiff generally received positive performance reviews until she was promoted to the position of technical writer in 1992. Plaintiff's immediate supervisor, Marjorie Jacobson, criticized plaintiff's substandard work and plaintiff became very sensitive to this criticism. Todd Harrison, a human-resources specialist who was brought in to address the problem, concluded that plaintiff had been promoted beyond her skill level and that she "would not be a good candidate for reassignment within the company as her performance/interpersonal skill deficiencies precede her." Shortly after receiving her performance appraisal from Derek Knight, her manager, plaintiff began a medical leave of absence for job stress. Plaintiff was treated by Dr. Rosalind Griffin, who concluded that plaintiff suffered from major depression/adjustment disorder and was disabled from work.

To confirm plaintiff's continued eligibility for disability benefits, defendant's benefit plan administrator arranged for plaintiff to be examined by another psy-

---

default judgment was erroneously entered against defendant and then set aside. Defendant removed the action to the federal district court, which affirmed the arbitrator's decision. See *Collins v BCBSM*, 916 F Supp 638 (ED Mich, 1995). The Sixth Circuit Court of Appeals vacated the district court's ruling, however, after determining that the federal courts lacked subject-matter jurisdiction over the action. See *Collins v BCBSM*, 103 F3d 35 (CA 6, 1996). The action was then remanded to the original state trial court, where the parties filed cross-motions for summary disposition, and the circuit court confirmed the arbitrator's award.

chiatrist, Dr. Jolyn Welsh Wagner. At the interview, plaintiff was angry because Dr. Wagner arrived twenty-five minutes late and because she believed defendant had disseminated information to her co-workers that she was undergoing psychiatric care. In an interim report sent to defendant's plan administrator on the same day as the examination, Dr. Wagner opined that plaintiff presented as an "angry hypervigilant, and extremely paranoid woman who made various threatening statements about her supervisor." Plaintiff attributed her problems at work to racism perpetrated by Jacobson, who she described as a "white bitch," and stated that she felt unsupported by Knight, her "Uncle Tom black manager." The report further stated that plaintiff said Jacobson was "living on borrowed time" and warned that plaintiff's comments should be taken seriously. In a more detailed report, Dr. Wagner indicated that plaintiff stated she "had killed [Jacobson] a thousand times in [her] mind," and that she talked about "taking a .38 and blowing [Jacobson] away." Plaintiff further indicated to Dr. Wagner that "she had thought of killing her supervisor prior to the [company] strike and had decided not to when the department was dispersed to other areas to meet the demands of the strike."

Defendant forwarded a copy of Dr. Wagner's interim report to plaintiff's treating physician, Dr. Griffin, and asked if she believed plaintiff posed a threat to Jacobson or others in the workplace. Dr. Griffin responded that she did not feel plaintiff had the ability to carry out her homicidal thoughts referenced in Dr. Wagner's report, that plaintiff had not expressed similar thoughts during their sessions, and that she did not feel plaintiff was a danger to herself

or others in the workplace. Dr. Griffin added that defendant should safeguard plaintiff's confidentiality and that plaintiff's prognosis for returning to work was uncertain because of plaintiff's belief that her co-workers had been informed of her psychiatric treatment. Dr. Griffin ultimately determined that plaintiff had recovered from her disability. When plaintiff returned to work she was terminated. Defendant had made the decision to terminate plaintiff's employment after receiving Dr. Wagner's report, but delayed firing plaintiff until she returned to work.

Plaintiff filed a request for binding arbitration pursuant to her employment agreement with defendant. Hearings were held before an arbitrator with regard to plaintiff's claims that her discharge violated the ADA and the HCRA. During the hearing, defendant acknowledged that plaintiff's statements to Dr. Wagner were the sole reason for plaintiff's termination. At the hearing, plaintiff testified that she did not recall making most of the statements attributed to her in Dr. Wagner's report; although she did acknowledge calling Jacobson a liar and a bitch. Dr. Wagner testified in a deposition that she would not characterize plaintiff's statements as "threats," but rather as expressions of plaintiff's thoughts. Dr. Wagner also stated that she would defer to the opinion of the treating physician, Dr. Griffin, with respect to whether plaintiff had recovered from her disability or whether she posed any actual threat to Jacobson. Dr. Griffin testified in her deposition that she never reported plaintiff's homicidal ideation because she did not believe that plaintiff would act on it or that she otherwise posed any threat to Jacobson.

The arbitrator ruled in plaintiff's favor with regard to both claims and ordered that plaintiff be reinstated with back pay to a "comparable, but not identical, position" under a different supervisor and at a different work site if possible. The award added that defendant had the right to satisfy itself that plaintiff did not present a threat to other employees by requiring plaintiff to be examined by another psychiatrist and to continue treatment if necessary. Specifically, the arbitrator found that plaintiff's statements to Dr. Wagner were products of her psychiatric disability. The arbitrator also found that defendant was aware when it decided to terminate plaintiff's employment that she suffered from a psychiatric disability that manifested itself in homicidal ideation. Therefore, the arbitrator concluded that defendant's termination of plaintiff was a violation of both the ADA and the HCRA because defendant was not justified in considering plaintiff to be an unqualified person and did not have a nondiscriminatory basis for termination. On judicial review, the circuit court confirmed the arbitrator's ruling.

II

On appeal, defendant argues that the trial court erred in affirming the arbitrator's award because it was premised on an error of law. We agree.

A

The parties' arbitration agreement included a provision for limited judicial review of the arbitrator's decision:

The decision of the arbitrator shall be final and binding; however, that limited judicial review may be obtained in a

Michigan federal district court or Michigan circuit court of competent jurisdiction (a) in accordance with the standards for review of arbitration awards as established by law; or (b) on the ground that the arbitrator committed an error of law.

We find this judicial review provision to be consistent with the provisions of MCL 600.5001 *et seq.*; MSA 27A.5001 *et seq.*, and MCR 3.602, which govern "statutory arbitration" awards. See *Gordon Sel-Way, Inc v Spence Bros, Inc*, 438 Mich 488, 495; 475 NW2d 704 (1991). Under the court rule, a statutory arbitration award may be vacated in limited circumstances, such as where an arbitrator evidences partiality, refuses to hear material evidence, or exceeds powers. MCR 3.602(J)(1); *Gordon Sel-Way, supra* at 495-497. Arbitrators exceed the scope of their authority "whenever they act beyond the material terms of the contract from which they primarily draw their authority, or in contravention of controlling principles of law." *DAIIE v Gavin*, 416 Mich 407, 434; 331 NW2d 418 (1982); *Gordon Sel-Way, supra* at 496. A reviewing court may vacate an arbitration award where it finds an error of law that is apparent on its face and so substantial that, but for the error, the award would have been substantially different. *Gordon Sel-Way, supra* at 497. Given these foregoing principles, we find no merit to plaintiff's argument that the parties' arbitration agreement was invalid to the extent that it allowed judicial review for errors of law. As our Supreme Court stated in *Gavin, supra* at 433, "If the appellate judiciary has any proper function at all, it is to correct material error."

B

The gravamen of this appeal requires us to determine whether the arbitrator committed an error of law in ruling that plaintiff was discharged because of her disability, rather than for her homicidal ideation toward her supervisor. Although we do not dispute the arbitrator's finding of fact that plaintiff's homicidal ideation was a product of her psychiatric condition, we conclude that the arbitrator committed an error of law in ruling that defendant's discharge of plaintiff constituted discrimination under the ADA and the HCRA. We hold that plaintiff failed to establish a prima facie case of discrimination under the ADA or the HCRA because her homicidal ideation left her unqualified for employment with defendant and because defendant did not discharge her because of her disability.

The federal ADA and this state's HCRA have similar purposes and definitions, and utilize similar analyses. *Stevens v Inland Waters, Inc*, 220 Mich App 212, 216-217; 559 NW2d 61 (1996); *Fritz v Mascotech Automotive Systems Group, Inc*, 914 F Supp 1481, 1491 (ED Mich, 1996). To establish a prima facie case under the ADA, a plaintiff must demonstrate that (1) she was disabled, (2) she was qualified to perform the essential functions of the job, and (3) her employer subjected her to discriminatory treatment solely because of her disability. 42 USC 12112; *Fritz, supra* at 1491. Similarly, a prima facie case of discrimination under the HCRA is established where (1) the plaintiff is "handicapped" as defined in the statute, (2) the handicap is unrelated to the plaintiff's ability to perform the duties of a particular job or position or is unrelated to her qualifications for employment or promotion, and

(3) the plaintiff has been discriminated against in one of the ways set forth in the statute. MCL 37.1202(1); MSA 3.550(202)(1), MCL 37.1103(e)(i)(A); MSA 3.550(103)(e)(i)(A); *Stevens, supra* at 215.

Defendant argues on appeal that, because plaintiff was discharged for her expressed homicidal ideation regarding her supervisor, not because of her disability, it did not act with discriminatory intent. Our review of the current state of the law regarding this issue supports defendant's argument that a disabled employee may be discharged for misconduct, even where the misconduct is a manifestation of the employee's disability. See, e.g., *Maddox v Univ of Tennessee,* 62 F3d 843, 848 (CA 6, 1995) (upholding discharge of a football coach for drunken driving, even though he claimed his behavior was the result of alcoholism); *Landefeld v Marion General Hosp, Inc,* 994 F2d 1178, 1181 (CA 6, 1993) (upholding discharge of an internist whose misconduct in pilfering colleagues' hospital mailboxes was claimed to be a result of his mental illness); *EEOC v Amego, Inc,* 110 F3d 135, 149 (CA 1, 1997) (upholding discharge of nurse who, because of depression, attempted suicide by taking overdoses of prescription medications); *Johnson v New York Hosp,* 96 F3d 33, 34 (CA 2, 1996) (upholding discharge of hospital employee who claimed that off-duty scuffle with hospital security guards while intoxicated was a result of his alcoholism); *Pesterfield v Tennessee Valley Authority,* 941 F2d 437, 442 (CA 6, 1991) (upholding discharge of employee whose psychological condition rendered him hypersensitive to criticism and rejection in the workplace). Recently, in *Palmer v Cook Co Circuit Court,* 117 F3d 351 (CA 7, 1997), the Seventh Circuit

Court of Appeals held that an ADA claim failed where the plaintiff had been discharged because of threats she made to her supervisor, not because of her diagnosed major depression/delusional disorder. Chief Judge Posner explained, *id.* at 352:

> There is no evidence that Palmer was fired because of her mental illness. She was fired because she threatened to kill another employee. The cause of the threat was, we may assume, her mental illness. . . . But if an employer fires an employee because of the employee's unacceptable behavior, the fact that that behavior was precipitated by a mental illness does not present an issue under the Americans with Disabilities Act. The Act does not require an employer to retain a potentially violent employee. Such a requirement would place the employer on a razor's edge—in jeopardy of violating the Act if it fired such an employee, yet in jeopardy of being deemed negligent if it retained him and he hurt someone. The Act protects only "qualified" employees, that is, employees qualified to do the job for which they were hired; and threatening other employees disqualifies one.

A qualified individual with a disability is one who satisfies the requisite skill, experience, education, or other work-related requirements of the job and who can perform its essential functions with or without reasonable accommodation. 42 USC 12111(8). Simply put, the ADA does not cover all disabled persons, but only those who can perform their jobs' essential functions with the aid of reasonable accommodation. Indeed, an express provision of the ADA allows employers to defend against a charge of discrimination by establishing certain employee "qualification standards" that are job-related, consistent with business necessity, and accomplished by reasonable accommodation. 42 USC 12113(a). "Qualification stan-

dards" include "a requirement that an individual shall not pose a direct threat to the health and safety of other individuals in the workplace." 42 USC 12113(b). "Direct threat" means "a significant risk to the health and safety of others that cannot be eliminated by reasonable accommodation." 42 USC 12111(3).

Plaintiff argues that defendant impermissibly *perceived* her as a direct threat to workplace safety, despite the fact that she had never directly threatened her supervisor and despite the opinion of plaintiff's treating psychiatrist that plaintiff would not act on her homicidal ideation. While we acknowledge the distinction between expressing homicidal thoughts to a psychiatrist in the context of a disability benefit determination and directly threatening a co-worker—given that employees are not generally subject to discharge or discipline for mere thoughts or ideas—we are not persuaded that the distinction is controlling on these facts.[2]

Our research has uncovered two cases that discuss an employer's response to an employee's perceived, as opposed to actual, threat against a co-worker. In *Layser v Morrison*, 935 F Supp 562, 569 (ED Pa, 1995), the plaintiff was employed as a security guard

---

[2] Our holding today is not intended to have a chilling effect on the sanctity of the physician-patient privilege or the psychiatrist-patient privilege. Plaintiff here was not protected by any such privilege in her discussions with Dr. Wagner, because Dr. Wagner was retained by defendant's benefit plan administrator for the purpose of evaluating plaintiff's eligibility for continued disability benefits, not for the purpose of treatment. Thus, plaintiff was aware that Dr. Wagner's report would be forwarded to defendant for review. Moreover, we note that a patient's threats of violence, made while under treatment, are generally not privileged. *Davis v Lhim*, 124 Mich App 291, 303; 335 NW2d 481 (1983), on remand 147 Mich App 8, 382 NW2d 195 (1985), rev'd on other grounds sub nom *Canon v Thumundo*, 430 Mich 326; 422 NW2d 688 (1988).

and, while suffering job-related stress and depression, dreamed that he had pointed his revolver at his supervisor's head. The plaintiff sought professional help, telling a psychiatrist about the dream. The psychiatrist, fearful that the plaintiff posed a serious threat, warned the plaintiff's supervisor, who repossessed the plaintiff's revolver and placed him on inactive duty for three months. The plaintiff sued and, on the defendant-employer's motion for summary judgment, the district court held that the plaintiff's ADA claim was precluded because, among other reasons, the defendant had submitted sufficient evidence in support of its affirmative defense under 42 USC 12113(b) that the plaintiff "posed a significant risk" to the safety of others. The court stated: "The evidence presented could prove that a threat existed that Layser might have, acting under stress, anger, and depression, shot [his supervisor]." *Id.* at 569. And, in *Vargas v Gromko*, 977 F Supp 996, 1002-1003 (ND Cal, 1977), the plaintiff told his doctor that he would have shot his supervisors if he had had a gun. After he was discharged, the plaintiff contended that, because his statement was qualified with the word "if," it could not be perceived as a real threat because he did not have the instrumentality to carry out the threat. The district court, in dismissing the plaintiff's ADA claim, concluded: "[A] reasonable trier of fact could not find that, simply because Plaintiff did not possess a gun at the moment he uttered his threat to Dr. Harrison, the threat could not have been perceived as real." *Id.* at 1003.

Here, the facts are considerably more compelling than those in *Layser* or *Vargas, supra*. Plaintiff's homicidal thoughts regarding Ms. Jacobson were

frighteningly specific and detailed, not vague or iso-
lated. Indeed, plaintiff indicated to Dr. Wagner that
her vehement bitterness toward Ms. Jacobson had
culminated in a specific plan to kill her, but that
plaintiff had decided not to when a strike intervened.
We believe it is clear that employers must be afforded
wide latitude to ensure a safe workplace for their
employees. Where an employee's homicidal thoughts
about a co-worker are either expressed in the work-
place, or otherwise made known to others in the
workplace, the law does not require the employer to
establish that the employee would affirmatively act
on her homicidal thoughts before discharging her. To
hold otherwise would, in the words of Chief Judge
Posner, "require an employer to retain a potentially
violent employee . . . plac[ing] the employer on a
razor's edge—in jeopardy of violating the Act if it
fired such an employee, yet in jeopardy of being
deemed negligent if it retained him and he hurt some-
one." *Palmer, supra* at 352. Thus, we conclude that
defendant did not violate the ADA in discharging plain-
tiff, whom it considered a direct threat to workplace
safety.

Finally, we acknowledge that an employer generally
has a duty to make "reasonable accommodations" to
enable a disabled employee to perform the essential
functions of the job, if the employer can do this with-
out "undue hardship." 42 USC 12112(b)(5)(A). How-
ever, the duty of reasonable accommodation applies
only where the disabled employee is otherwise quali-
fied for the position. Here, because plaintiff's homici-
dal thoughts left her unqualified for continued
employment with defendant, we need not further
address the issue of reasonable accommodation. In

this context, we defer again to Chief Judge Posner, who explained in *Palmer, supra* at 353:

> [W]e cannot believe that this duty [of reasonable accommodation] runs in favor of employees who commit or threaten to commit violent acts. The retention of such an employee would cause justifiable anxiety to coworkers and supervisors. It would be unreasonable to demand of the employer either that it force its employees to put up with this or that it station guards to prevent the mentally disturbed employee from getting out of hand. So clear is this that we do not think a remand is necessary to explore the possibilities of accommodation. [Citations omitted.]

See also *Williams v Widnall*, 79 F3d 1003, 1006 (CA 10, 1996).

The ADA's "qualified" language and the HCRA's "handicapped" language entail largely identical analyses. *Fritz, supra* at 1491. That is, plaintiff here has failed to meet her burden under the HCRA of establishing that her handicap was unrelated to her ability to perform the duties of her job or unrelated to her qualifications for employment, and that defendant discharged her with discriminatory intent. MCL 37.1103(e)(i)(A); MSA 3.550(103)(e)(i)(A), MCL 37.1202(1)(b); MSA 3.550(202)(1)(b); *Crittenden v Chrysler Corp*, 178 Mich App 324, 331; 443 NW2d 412 (1989).

Accordingly, because plaintiff has failed to establish a prima facie case under either the ADA or the HCRA, her claims fail. The arbitrator committed substantial legal error in ruling otherwise; therefore, we vacate the circuit court order confirming the arbitrator's award.

The circuit court order confirming the arbitrator's award is vacated.