**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 10a0228n.06**

**No. 09-1644**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**
**Apr 13, 2010**
LEONARD GREEN, Clerk

ALBERTA HUBBARD, )
 )
 Plaintiff-Appellant, )
 )
v. ) ON APPEAL FROM THE UNITED
 ) STATES DISTRICT COURT FOR THE
DETROIT PUBLIC SCHOOLS, ) EASTERN DISTRICT OF MICHIGAN
 )
 Defendant-Appellee. )

Before: GUY, COLE and SUTTON, Circuit Judges.

SUTTON, Circuit Judge. Alberta Hubbard sued the Detroit Public School District, alleging

that it violated federal and state law when it failed to accommodate her disability. A jury found in

favor of the school district, and Hubbard, represented at trial but now proceeding *pro se*, claims that

(1) the evidence does not support the jury's verdict; (2) the trial court should not have allowed the

jury to hear about her application for social security benefits; (3) defense counsel inflamed the jury

during closing arguments; and (4) the court improperly instructed the jury. We affirm.

I.

In 1998, Hubbard began working as a social worker in the Detroit Public School District.

She worked primarily at Coffey Middle School, where she provided services to students, many of

whom had special needs and behavioral issues. Her role at Coffey included meeting one-on-one with

students, observing students in the classroom, evaluating students for emotional impairments and

autism, developing Individualized Education Plans, and providing intervention services to students and their families.

In March 2002, Hubbard had a hysterectomy. She took medical leave to recover from the surgery and intended to return to work within 6 to 8 weeks. Shortly after the surgery, however, Hubbard began experiencing fecal incontinence. Throughout 2002 and 2003, she consulted with a number of doctors and underwent two surgeries to try to improve the condition. Neither surgery was successful. And physical therapy, medication, herbal supplements, even electric shock therapy, failed to solve the problem.

Because Hubbard's incontinence left her unable to work, the school district granted her an extended medical leave. In October 2002, she applied for and received Social Security Disability Insurance benefits, which she continues to receive on a monthly basis. The school district continued renewing her leave until mid-2005, when Hubbard reached the district's three-year cap on leave entitlement. The district denied her request for an extension beyond the three years, and Hubbard did not return to work.

In February 2006, Hubbard filed a request to return to work with ADA accommodations. She and her treating physician, Dr. John Eggenberger, said that she would be able to perform her job as a school social worker if the district gave her "ready access to a bathroom within 20 seconds" and "permitted [her] to sit at will." R.72-4, 72-5. Approximately a week after she made her request, the district sent her a letter denying the accommodations and stating that, "due to the restrictions listed by [her] physician," it could not grant her request to return to work. R.72-6. When Hubbard

inquired about her options, human resources informed her that her "only options were to retire/resign." R.26-8, 2.

In May 2007, Hubbard filed this lawsuit, raising claims under the Americans with Disabilities Act and Michigan's People with Disabilities Civil Rights Act. In November 2007, the school district formally discharged her, stating that she was no longer eligible for leave and had not returned to work when her leave expired. In April 2008, a jury heard Hubbard's case, and it found that the school district did not violate federal or state disability discrimination laws.

## II.

Hubbard claims that the evidence does not support the jury's verdict. That is mistaken.

The first problem with this argument is that Hubbard did not preserve it for appeal. After an adverse jury verdict, a litigant must move for a new trial or for judgment as a matter of law under Rule 50(b) of the Federal Rules of Civil Procedure in order to preserve a sufficiency challenge for appeal. *See Pennington v. W. Atlas, Inc.*, 202 F.3d 902, 911 (6th Cir. 2000). Whether a verdict is sufficiently against the weight of the evidence as to require a new trial or to warrant judgment as a matter of law "calls for the judgment in the first instance" by the district court, "who saw and heard the witnesses and has the feel of the case which no appellate transcript can impart." *Cone v. W.V. Pulp & Paper*, 330 U.S. 212, 216 (1947). Failure to give the district court an opportunity to pass on a sufficiency claim thus waives the argument on appeal. *See Pennington*, 202 F.3d at 911.

Conceding that she waived her claim, Hubbard asks us to review the verdict for plain error. Hubbard Reply 1. Yet we have previously declined to give even this modest form of review to unpreserved sufficiency challenges, save in the context of appeals from criminal judgments, *see Culp*

*v. DaimlerChrysler Corp.*, No. 04-1478, 2005 WL 1993334, at \*2–3 (6th Cir. Aug. 16, 2005), and have suggested that we may lack jurisdiction over these types of claims, *Allison v. City of East Lansing*, 484 F.3d 874, 876 (6th Cir. 2007). In civil cases, the standard for reviewing *preserved* sufficiency challenges is already "strikingly similar, if not identical to plain-error review," we reasoned, so extending plain-error review to unpreserved challenges would "allow any party to forgo moving for relief in the trial court" and obtain the same level of review they would have obtained had they preserved their claim. *Culp*, 2005 WL 1993334, at \*2-3.

We need not decide whether plain error review is invariably out of the question in this context, however, because, even if we considered Hubbard's sufficiency challenge, she would not prevail. Circuits willing to review unpreserved sufficiency claims consider only whether "*any* evidence . . . irrespective of its sufficiency" supports the jury's verdict "or whether plain error was committed which, if not noticed, would result in a manifest miscarriage of justice." *Bristol Steel & Iron Works v. Bethlehem Steel Corp.*, 41 F.3d 182, 186 (4th Cir. 1994) (emphasis added); *accord Delano-Pyle v. Victoria County*, 302 F.3d 567, 573 (5th Cir. 2002). This jury verdict clears that modest hurdle. The school district presented evidence that Hubbard's fecal incontinence left her unable to perform the essential functions of a school social worker even with accommodation. The position, for example, required Hubbard to "meet the [students] where they are," and it could not be performed "most of the time" in an office, where the school district might have provided convenient access to an unoccupied restroom. R.60, 101. "Part of" the school social work position "is that [social workers] observe students in the classroom" and, "if the student is in a classroom that's way away from the restroom," the observation has to occur nonetheless. R.60, 106. Whether a different

jury might have reached a different conclusion based on this and other evidence is beside the point. What matters is that the district put on *some* evidence showing that Hubbard could not have performed her job even with accommodation. That alone suffices to show that the jury did not plainly err.

III.

Hubbard claims that the district court erred in permitting the defendants to introduce her application for Social Security Disability Insurance into evidence. Showing the application to the jury, she maintains, was "grossly prejudicial," as it implied that her disability rendered her unable to perform her job. Hubbard Br. 12. No reversible error occurred.

Courts may exclude evidence if "the danger of unfair prejudice, confusion of the issues, or misleading the jury" outweighs its probative value. Fed. R. Evid. 403. Yet the district court did not abuse its discretion in concluding that the probative value of the application outweighed its potentially prejudicial effects. *See Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 378 (6th Cir. 2009) (reviewing evidentiary ruling for abuse of discretion). A central issue in the case was whether Hubbard could perform the essential functions of her job. She stated on her benefits application that she was "unable to work," and the court permissibly treated that sworn statement as a party admission. Fed. R. Evid. 801(d)(2). That the evidence may have weakened her case does not make it impermissibly prejudicial, much less require its exclusion.

Hubbard adds that the court should not have allowed the school district to present evidence that the district discharged her because she failed to return to work when her leave expired, not because of her disability. Admitting this evidence was improper, she says, because (1) the district

court, in denying the school district's motion for summary judgment, suggested that Hubbard had not abandoned her job, and (2) the school district fabricated evidence about her discharge. Hubbard forfeited these objections, however, when she did not object to the relevant evidence at trial. *See Bowman v. Corrections Corp of Am.*, 350 F.3d 537, 548 (6th Cir. 2003). We therefore give only plain-error review to her claim. *See id.* In this instance, the court's admission of evidence regarding the circumstances of her discharge did not affect Hubbard's substantial rights. Hubbard's attorney had an adequate opportunity to cross-examine the relevant witness about the veracity of the school district's justification, and the members of the jury accordingly were in as good a position as anyone to see which party was being straight with them.

IV.

Hubbard claims that the school district's counsel inflamed the jury during closing arguments, first by showing her application for Social Security benefits on the overhead projector while addressing the jury. Hubbard says that the exhibit, which contained her signature and provided that "anyone making a false statement [on a social security application] . . . commits a crime," could have led the jury to conclude that Hubbard was lying about her condition. Hubbard Br. 27. But the district court did not abuse its discretion in permitting defense counsel to display the exhibit over Hubbard's objection. As noted, the school district permissibly introduced the benefits application into evidence earlier in the trial, and counsel permissibly displayed it during closing arguments to remind the jury that Hubbard had successfully filed for disability benefits. The court's ruling was not improper or unduly prejudicial, and above all it was not an abuse of discretion.

Hubbard also points to defense counsel's comments about her prior malpractice suit, her social security application and her medical condition. Hubbard waived these arguments, however, by not objecting to the comments at trial. *See Bowman*, 350 F.3d at 548. We review this argument only for plain error, *id.*, and find none. Defense counsel's statements related to evidence presented during trial, and his arguments about the conclusions to draw from that evidence were reasonable inferences, not reversible cheap shots.

V.

Hubbard raises a number of objections to the jury instructions. This type of challenge requires us to consider "whether, taken as a whole, the instructions adequately inform[ed] the jury of the relevant considerations and provide[d] the jury with a sound basis in law with which to reach a conclusion," and we will reverse only if the court's instructions were "confusing, misleading, and prejudicial." *Pivnik v. White, Getgey & Meyer Co., LPA*, 552 F.3d 479, 488 (6th Cir. 2009).

Hubbard first claims that the district court did not instruct the jury that the school district had a responsibility to engage in an "interactive dialogue" with Hubbard once she requested accommodations. Hubbard Br. 20. Not true. The court instructed the jury that "[b]oth the employer and the employee *must* cooperate in this interactive process in good faith." R.68, 186 (emphasis added). That instruction adequately conveyed to the jury the emphasis the ADA places on cooperation between employer and employee when the employee requests an accommodation.

Hubbard next argues that the district court failed to instruct the jury, despite Hubbard's apparent request, that the school district's refusal to engage in the interactive process could establish "bad faith." Hubbard Br. 21. While the court never issued a specific instruction along these lines,

its failure to do so did not mislead or confuse the jury. The court instead instructed the jury that participating in the interactive process is evidence of "good faith," R. 68, 186, and the jury assuredly could reasonably infer that not participating in the interactive process shows bad faith.

Hubbard next argues that the court failed to mention the necessity of conducting an "individualized assessment" of her particular disabilities. But even though the court did not use these words, it did say that the "interactive process" required the parties to consider Hubbard's "precise limitations" and the reasonableness of an accommodation for them, which sufficed to present this theory of liability to the jury. R.68, 186.

Hubbard next argues that the trial court erred in instructing the jury about the school district's "direct threat" defense. R.68, 188. Under Michigan and federal law, employers may defend a disability-discrimination claim on the ground that the disability posed a "direct threat to the health or safety of other individuals in the workplace" and that reasonable accommodations would not eliminate the threat. *See* 42 U.S.C. § 12113(b); 29 C.F.R. § 1630.15(b)(2); *Collins v. Blue Cross Blue Shield of Michigan*, 579 N.W.2d 435, 439–40 (Mich. Ct. App. 1998). The school district asserted a "direct threat" defense in its answer, and elicited testimony at trial that (1) abruptly leaving school children unattended to use the bathroom would violate school district policy and pose a threat to student safety, and (2) in the event Hubbard had an accident in the presence of students, they could encounter dangerous germs contained in fecal matter. In view of this evidence and in view of the relevance of the defense to this case, the trial judge did not exceed its discretion in instructing the jury about the elements of a direct threat defense.

Hubbard responds that a "direct threat" instruction was inappropriate because she never would have exposed her students to harmful bacteria. A jury might well have believed her, but that does not mean the district court erred in letting the jury decide. Hubbard persists that the court should not have given a direct threat instruction because defense counsel asked her "highly offensive" questions during cross-examination about the possibility that her students would come in contact with fecal matter. Hubbard Br. 25. Even assuming that counsel exceeded the bounds of fair questioning, the customary remedy for offensive questioning is striking the improper remarks from the record or administering a limiting instruction, not barring the jury from considering the defense at all.

VI.

For these reasons, we affirm.