# STATE OF MICHIGAN

# COURT OF APPEALS

PIETRO DEGIULI,

       Plaintiff-Appellant,

v

CITY OF TAYLOR and TAYLOR POLICE
DEPARTMENT,

       Defendants-Appellees.

UNPUBLISHED
December 23, 2014

No. 317681
Wayne Circuit Court
LC No. 12-011667-CZ

Before: JANSEN, P.J., and TALBOT and SERVITTO, JJ.

PER CURIAM.

Plaintiff appeals as of right the trial court's order granting defendant's[1] motion for summary disposition pursuant to MCR 2.116(C)(10) on plaintiff's disability discrimination and whistleblower claims. We affirm.

This action arises from defendant's decision not to reinstate plaintiff as a public safety officer (PSO) in July 2012. Plaintiff worked as a PSO from February 1996 until early 2005, when he went on medical leave due to an injured shoulder. That year, plaintiff was named as one of several defendants in a wrongful death action brought by the estate of Donald Clausen. Clausen died in jail after he was arrested by City of Taylor police officers. Plaintiff testified in a deposition in the Clausen matter that he believed Clausen's death could have been prevented by proper police training. Plaintiff reiterated this claim in letters to the city's human resources department and mayor. The letters further stated that Clausen's death caused plaintiff to suffer "Major Depression[.]" The defendants were ultimately granted summary judgment in the Clausen matter in 2007.

---

[1] Plaintiff originally named the city of Taylor and the Taylor Police Department as individual defendants, but agreed to dismiss the police department as a party based on the City's argument that the department was not a distinct legal entity. The trial court granted summary disposition on this issue and plaintiff does not challenge it on this appeal. We therefore refer to the city of Taylor as the singular defendant.

-1-

Between 2007 and 2008, plaintiff filed a claim for workers' compensation benefits, citing his shoulder injury and a psychiatric condition. During hearings on his claim, plaintiff stated that he was depressed, suicidal, and described visions of "eviscerate[ing]" or "cut[ting] the guts out" of then police chief Dale Tamsen and others at the police department. The Workers' Compensation Appellate Commission ultimately denied plaintiff benefits.

Between 2009 and 2011, plaintiff sent additional communications to Tamsen, the mayor, and others, alleging that the police department treated him unfairly in connection with the Clausen case. Plaintiff also accused the department and others of "Multiple Acts of Public Corruption . . . Suppression of Evidence . . . Civil Rights Violations . . . [and] Acts of Perjury . . ." among other offenses.

Plaintiff treated for depression with psychologist Paul Savickas. Plaintiff reported suicidal and homicidal ideations to Savickas multiple times between 2009 and 2011. On January 24, 2011, Savickas completed a written evaluation stating:

> [Plaintiff] views the world as a malevolent place and his mission is to destroy evil in the world. That need to attack evil often resulted in dissociative states wherein he felt very intense anger directed at people he felt were acting improperly. In his psychotherapy sessions, he detailed frequent urges of wanting to eviscerate others, to eat their flesh, or to bite off their heads.

As of October 2011, plaintiff was "still voicing urges to hurt [him]self."

On July 2, 2012, plaintiff requested to return to duty as a PSO. Plaintiff provided defendant notes from a physician and a psychiatrist clearing him for work without restrictions.

Before reinstating plaintiff, defendant requested that he undergo a three-step process to determine his fitness for duty, which involved a physical examination, a mental examination, and a criminal background check. Tamsen suggested the testing. Tamsen, Mary Sclabassi,[2] and human resources representative Sheila Gorski, decided that an evaluation was necessary "due to the position [plaintiff is] in," as a PSO. PSOs deal with "frantic 911 calls," "violent prisoners," and "sensitive information"[.] They also monitor inmates, communicate with other officers, prepare investigative reports, interview victims, witnesses and suspects, and subdue suspects in the event of resistance. Tamsen, Sclabassi, and Gorski wanted to ensure that plaintiff could interact safely with other officers and the public. City firefighters also underwent reemployment screening when they returned from a layoff in September 2012, but their evaluations did not include mental examinations. Sclabassi did not know of any other person who was required to complete the three-step process, but stated, "we have never had anyone in this circumstance who has been gone for such a substantial amount of time."

On September 4, 2012, plaintiff filed the present lawsuit, alleging that defendant's refusal to reinstate him constituted retaliation in violation of the Michigan Whistleblowers' Protection

---

[2] Tamsen retired in October 2012 and Mary Sclabassi became chief of police.

Act (WPA), MCL 15.361 *et seq.*, and discrimination under the Persons with Disabilities Civil Rights Act (PWDCRA), MCL 37.1101 *et seq.* Plaintiff's PWDCRA claim posited that defendant wrongfully perceived plaintiff as disabled.

After filing the complaint, plaintiff proceeded with the three-step process. On December 3, 2012, psychologist Lyle Danuloff evaluated plaintiff on behalf of defendant. Danuloff concluded that plaintiff was fit to return to work and reported his findings to Sclabassi. Sclabassi then asked Danuloff to meet with plaintiff a second time to discuss plaintiff's 2008 threats. At the follow up evaluation, plaintiff explained that his "utterances in 2008 were only that-utterances, and did not represent any indications of intent to take action" against Tamsen or any other coworker. Plaintiff assured Danuloff that he had no intention or thoughts of hurting himself or others. Danuloff told Sclabassi that plaintiff "was an angry guy and was holding some anger at the Taylor Police Department,"[3] but Danuloff stated that he still believed plaintiff was fit to return to work.

Savickas's reports from the latter half of 2012 also showed that plaintiff harbored anger toward the police department. When discussing those associated with the department at an August 29, 2012, appointment, Savickas reported that plaintiff stated that, "in public, [plaintiff] want[s] to knock their face off." During an October 31, 2012, meeting, Savickas stated that he was "unsure if [plaintiff's] ego strength will tolerate future stressors."

In addition to the mental evaluation, plaintiff passed the physical examination and background check. Defendant, however, refused to reinstate plaintiff, citing his 2008 threats.

On June 21, 2013, defendant moved for summary disposition on all of plaintiff's claims based, in part, on MCR 2.116(C)(10). Defendant argued that plaintiff could not show a causal connection between his whistleblowing and its decision because of the different police chiefs, human resources representatives and mayors defendant had between 2005 and 2011. Defendant also argued that plaintiff's prior threats were legitimate reasons not to reinstate plaintiff under both the PWDCRA and WPA. In response, plaintiff characterized the three-step return to work evaluation as pretext because no other employee had been required to undergo such testing before returning to work. Plaintiff also argued that the prior threats could not have been the true reason for defendant's decision not to reinstate him because Danuloff cleared plaintiff for work.

The trial court ruled that "[p]laintiff cannot establish that being a person perceived with a disability is unrelated to [his] qualifications for employment and that [d]efendant's refusal to hire [p]laintiff [is] because of a discriminatory intent." Citing *Collins v Blue Cross Blue Shield of Michigan*, 228 Mich App 560; 579 NW2d 435 (1998), the trial court stated that defendant was not required to reinstate a potentially violent employee. The trial court further ruled that plaintiff's threats precluded his WPA claim because "[plaintiff] can't prove any damages because he can't get rehired as a Police Officer because he's threatened to eviscerate Tamsen and

---

[3] According to Sclabassi, Danuloff told her "that [plaintiff] is the angriest son of a b---- I have ever met, but if you tell anyone I said that, I will deny it."

others at the police department." The trial court granted defendant summary disposition on both claims under MCR 2.116(C)(10).

This Court reviews a trial court's decision on a motion for summary disposition de novo. *Allen v Bloomfield Hills Sch Dist*, 281 Mich App 49, 52; 760 NW2d 811 (2008). A motion for summary disposition under MCR 2.116(C)(10) tests the factual support for a party's claims. *Skinner v Square D Co*, 445 Mich 153, 161; 516 NW2d 475 (1994). When reviewing a motion brought pursuant to MCR 2.116(C)(10), this Court considers the pleadings, affidavits, and other documentary evidence in a light most favorable to the nonmoving party. *Quinto v Cross and Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996), citing MCR 2.116(G)(5). Summary disposition should be granted where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id*.; see MCR 2.116(C)(10). A genuine issue of material fact exists if, when viewing the record in the nonmovant's favor, reasonable minds could differ on the issue. *Skinner*, 445 Mich at 162.

Although the holding in *Collins*, *supra*, is relevant to plaintiff's claim, that case does not necessarily control the present circumstances. The plaintiff in *Collins* took a medical leave of absence for depression. *Collins*, 228 Mich App at 563. During an evaluation for benefits eligibility, the plaintiff reported graphic fantasies about killing her supervisor. *Id*. The defendant terminated the plaintiff based on these statements. *Id*. at 565. The plaintiff pursued an arbitration claim against the employer arguing that the discharge violated the PWDCRA, then referred to as the Handicapper's Civil Rights Act (HCRA), and the Americans with Disabilities Act (ADA), 42 USC 12101 *et seq*. *Id*. The arbitrator found that the plaintiff's threats were a manifestation of her mental illness, and thus held that the defendant "was not justified in considering [the] plaintiff to be an unqualified person and did not have a nondiscriminatory basis for termination." *Id*. at 566. The defendant filed suit to vacate the arbitration award. *Id*. at 563.

This Court held that the plaintiff failed to state a prima facie case under the ADA or HCRA because her homicidal ideation left her unqualified for employment with the defendant and because the defendant did not discharge her because of her disability. *Collins*, 228 Mich App at 574. The Court explained that employers are entitled to "wide latitude" in determining workplace safety needs, as "the law does not require the employer to establish that the employee would affirmatively act on her homicidal thoughts before discharging her." *Id*. at 573. Pursuant to *Collins*, a disability that poses a direct threat to the safety of others in the workplace is not protected under the PWDCRA. *Id*. at 571-574.

The Court's review in *Collins* was limited to determining whether the arbitrator committed an error of law. *Collins*, 228 Mich App at 567. By contrast, the present appeal involves a review of a MCR 2.116(C)(10) motion for summary disposition, and all facts must be considered in a light most favorable to plaintiff. Plaintiff presented evidence that he was qualified for duty; he supplied a psychiatrist's note clearing him to return to work and Danuloff found him competent. In ruling that plaintiff was unqualified, the trial court rendered an impermissible factual finding that plaintiff still posed a threat of harm to defendant despite this evidence. See e.g., *Karaus v Bank of New York Mellon*, 300 Mich App 9, 16-17, 21; 831 NW2d 897 (2012).

Nevertheless, we affirm the trial court's grant of summary disposition because plaintiff failed to raise a genuine issue of material fact on the essential elements of his PWDCRA and WPA claims. See *Wickings v Arctic Enters, Inc*, 244 Mich App 125, 150; 624 NW2d 197 (2000) ("This Court ordinarily affirms a trial court's decision if it reached the right result, even for the wrong reasons.").

## I. PLAINTIFF'S PWDCRA CLAIM

The PWDCRA prohibits employment discrimination on the basis of actual or perceived disability. MCL 37.1202; MCL 37.1103(d)(iii). The act defines a perceived disability as, among other things, "[b]eing regarded as having a determinable physical or mental characteristic," MCL 37.1103(d)(iii), which "substantially limits 1 or more of the major life activities of that individual and is unrelated to the individual's ability to perform the duties of a particular job or position." MCL 37.1103(d)(i)(A).

To establish a claim of perceived disability discrimination, plaintiff was required to demonstrate: (1) that he was regarded as having a determinable physical or mental characteristic; (2) that the perceived characteristic was regarded as substantially limiting one or more of plaintiff's major life activities; and (3) that the perceived characteristic was regarded as being unrelated either to his ability to perform his particular job duties or to his qualifications for employment. *Michalski v Bar-Levav*, 463 Mich 723, 735; 625 NW2d 754 (2001). In addition to showing that he was perceived as disabled, plaintiff was also required to demonstrate that he was discriminated against in a way described in the PWDCRA, i.e., that defendant's perception that he was disabled played a role in its decision not to reinstate him. *Id*. at 730. Assuming that plaintiff could demonstrate those elements by a preponderance of the evidence, the burden would then shift to defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Kerns v Dura Mechanical Components, Inc*, *(On Remand)*, 242 Mich App 1, 12; 618 NW2d 56 (2000). A plaintiff may rebut an employer's articulated reason by showing that there was a triable issue of fact that the employer's reason was not the true reason, but was merely a pretext for disability discrimination. *Hall v McRea Corp*, 238 Mich App 361, 370-372; 605 NW2d 354 (1999).

Plaintiff claimed that Tamsen, and later Sclabassi, regarded him as mentally unfit for the PSO position. "[T]o determine whether there was evidence sufficient to establish that defendant perceived plaintiff as being disabled within the meaning of the PWDCRA, [this Court relies] on the three-step process utilized in *Bragdon* [*v Abbott*, 524 US 624; 118 S Ct 2196; 141 L Ed 2d 540 (1998)]." *Chiles v Machine Shop, Inc*, 238 Mich App 462, 476; 606 NW2d 398 (1999). That process is:

> First, we consider whether respondent's [complaint] was a physical impairment. Second, we identify the life activity upon which respondent relies . . . and determine whether it constitutes a major life activity under the [PWDCRA]. Third, tying the two statutory phrases together, we ask whether the impairment substantially limited the major life activity. [*Chiles*, 238 Mich App at 474, quoting *Bragdon*, *supra*.]

Plaintiff's perceived condition was a mental disability, which often carries negative or unusual stigmas in the eyes of others. *Chiles*, 238 Mich App at 475. After plaintiff requested reinstatement, Tamsen expressed concern whether plaintiff could handle "violent prisoners" and "complicated 911 calls," based in part on plaintiff's use of psychotropic medication. Sclabassi also questioned whether plaintiff should have the same access to weapons as other PSOs. Further, Tamsen, Sclabassi, and Gorski required plaintiff to take a mental examination, which Gorski acknowledged was not generally a part of the return to work process. Plaintiff therefore raised a genuine issue of material fact regarding whether defendant perceived him as mentally disabled.

Plaintiff did not specify the "major life activity" that was affected by the perceived impairment. Because he was not immediately reinstated, plaintiff appears to imply that defendant perceived him as incapable of working. While work may constitute a major life activity, "the inability to perform a *particular* job does not constitute a substantial limitation." *Chiles*, 238 Mich App at 478 (emphasis in original). Rather, the perceived condition must significantly impair plaintiff's ability to perform "at least a wide range of jobs." *Id*. The above evidence shows that Tamsen, Sclabassi, and perhaps Gorski, may have questioned plaintiff's fitness to perform the specific duties of a PSO, but it does not establish that they believed him incapable of performing any other job. Plaintiff presented no evidence that his perceived disability was viewed as a substantial limitation to his ability to work generally. Thus plaintiff did not raise a genuine issue of material fact regarding whether defendant perceived him to be substantially limited in a major life activity.

Plaintiff also did not show the perceived characteristic was regarded as being unrelated to his ability to perform his particular job duties. MCL 37.1103(A)(i); *Michalski*, 463 Mich at 735. Tamsen explained that defendant was concerned about plaintiff's mental condition "*due to the position* [plaintiff is] *in*, he has access to sensitive information, he deals with the general public, he deals with prisoners, he deals with frantic 911 phone calls, just like any other officer or PSO, so we have to make sure he can do the job for the general public." (Emphasis added.) Similarly, Sclabassi was concerned for "the safety of the officers, the internal personnel, the prisoners and the public." The record demonstrates that defendant regarded plaintiff's perceived mental condition as related to his ability to perform as a PSO. Plaintiff offered no evidence to the contrary. Plaintiff failed to satisfy this element of his claim.

Even if plaintiff could demonstrate a prima facie case under the PWDCRA, he could not show that defendant's stated reason for refusing to reinstate him, namely his prior threats, amounted to pretext for unlawful discrimination. Plaintiff argues that the three-step return to work process, which he alone was subjected to, demonstrates pretext. Disparate treatment may be used as evidence that an otherwise legitimate explanation for an adverse employment action is pretextual. *Town v Michigan Bell Telephone Co*, 455 Mich 688, 699-700; 568 NW2d 64 (1997). However, plaintiff cannot establish disparate treatment unless he and the others to which he compares himself were similarly situated or "nearly identical" in "all relevant aspects" of employment. *Id*. This includes committing the same type of misconduct. See *Venable v General Motors Corp*, 253 Mich App 473, 483; 656 NW2d 188 (2002), (holding that the plaintiff was not similarly situated to other employees who committed less egregious misconduct). City firefighters were not required to undergo a mental health examination as part of their return to work process, but as a PSO with different job duties, plaintiff was not similarly situated to the

-6-

firefighters. Sclabassi admitted that the three-step process was particular to plaintiff, but stated, "we have never had anyone in this circumstance who has been gone for such a substantial amount of time." Plaintiff offered no evidence that he was treated differently from: (1) any other PSO returning from a lengthy medical absence; or (2) from any other employee who admittedly threatened the life of his supervisor. While plaintiff may have been subject to unique treatment, he did not demonstrate evidence that he was subject to disparate treatment and failed to show that the three-step process was pretext for discrimination.

Further, plaintiff has not shown that defendant's proffered reasons for its decision not to immediately reinstate him were untrue. An employee's threats of harm to others in the workplace may be a legitimate, nondiscriminatory reason for an adverse employment action. *Collins*, 228 Mich App at 573-574. Tamsen and Sclabassi cited plaintiff's 2008 threats as points of concern. Sclabassi in particular requested that Danuloff meet with plaintiff a second time specifically to discuss the threats. Plaintiff did not dispute stating that he wanted to "eviscerate" or "cut the guts out" of Tamsen. Instead, he emphasized that these threats were remote in time. But even after requesting reinstatement, plaintiff told Savickas that he wanted to "knock their face off" in reference to persons connected with the police department. Plaintiff failed to offer any evidence to show that his prior threats were not the actual reason for the adverse action, or that defendant's true motivation was animus against plaintiff's perceived condition. See *Hazle v Ford Motor Co*, 464 Mich 456, 465-466; 628 NW2d 515 (2001) (stating that a plaintiff "must not merely raise a triable issue that the employer's proffered reason was pretextual, but that it was a pretext for [unlawful] discrimination.") (quotation omitted).

Plaintiff failed to demonstrate a genuine issue of material fact that his perceived disability was regarded as substantially limiting a major life activity and was unrelated to his ability to perform as a PSO. Plaintiff further failed to show pretext. Summary disposition on plaintiff's perceived disability claim was proper, albeit for reasons other than those relied upon by the trial court.

## II. PLAINTIFF'S WPA CLAIM

To establish a WPA claim, plaintiff must demonstrate that: (1) he engaged in protected activity as defined by the act; (2) he was subjected to an adverse employment action; and (3) a causal connection exists between the protected activity and the discharge or adverse employment action. *West v General Motors Corp*, 469 Mich 177, 183-184; 665 NW2d 468 (2003). "[W]histleblower claims are analogous to other antiretaliation employment claims brought under employment discrimination statutes" and, like plaintiff's PWDCRA claim, are also analyzed under the *McDonnell-Douglas* burden-shifting framework. See *Debano-Griffin v Lake County*, 493 Mich 167, 175; 828 NW2d 634 (2013), citing *McDonnell Douglas Corp v Green*, 411 US 792; 93 S Ct 1817; 36 L Ed 2d 668 (1973).

If a plaintiff establishes a prima facie WPA claim, a presumption arises that the employer's action was more likely than not motivated by the plaintiff's protected activity. *Debano-Griffin*, 493 Mich at 176. That presumption drops away, however, if the employer offers a legitimate, nonretaliatory reason for its decision, and plaintiff fails to show that his protected activity was a "motivating factor" behind the adverse action. *Id*.; *Hazle*, 464 Mich at 464-465. "A plaintiff must not merely raise a triable issue that the employer's proffered reason

was pretextual, but that it was a pretext for unlawful retaliation." *Debano-Griffin*, 493 Mich at 176 (quotation omitted).

Plaintiff's testimony in the Clausen matter constituted protected activity under the WPA. See *Henry v City of Detroit*, 234 Mich App 405, 413; 594 NW2d 107 (1999) (holding that a deponent who "(a) is an employee of the entity whose conduct is at issue, (b) has provided testimony by deposition . . . and (c) would be subject to a court-ordered subpoena to compel his attendance in any event," meets the definition of a whistleblower).

Plaintiff argued that he was subject to two adverse employment actions: (1) that rather than return him to work immediately, defendant required plaintiff to complete the three-step return to work process, and (2) that defendant refused to reinstate him after he passed the return to work process. However, plaintiff's complaint is based only on the first event. Plaintiff filed the present lawsuit on September 4, 2012, two months after defendant requested return to work testing. Despite passing the background check and the mental examination later in 2012, plaintiff argued that he was denied a return in March 2013, and was officially terminated in July 2013. Yet, plaintiff never amended his September 4, 2012, complaint to include the later adverse action. The only adverse action complained of in plaintiff's complaint was defendant's failure to immediately return plaintiff to work without the three-step process.

The request for a return to work mental examination was not an adverse employment action under these circumstances. See generally *Sullivan v River Valley School Dist*, 197 F3d 804, 811-812 (CA 6, 1999) cert den 530 US 1262; 120 S Ct 2718; 147 L Ed 2d 983 (2000) (holding that an employer may require a posthire mental examination consistent with the ADA and HCRA where there is reason to doubt whether the employee is capable of performing the job and the examination is limited to testing essential job functions). The PWDCRA prohibits an employer from taking "discriminatory action against an individual on the basis of physical or mental examinations *that are not directly related to the requirements of the specific job*." MCL 37.1202(1)(e) (emphasis added). Thus an employer may, in certain instances, test an employee for functions consistent with his job responsibilities.

Plaintiff made past threats to "eviscerate" his supervisor, expressed suicidal and homicidal thoughts to Savickas, and continues to harbor anger toward the police department. In this case, defendant had a legitimate reason to question whether plaintiff could perform his job functions. Those functions include monitoring and subduing "violent prisoners," handling "frantic 911 calls," interacting with victims, witnesses and suspects, and handling weapons. A mental examination, including the one performed in the present case, in which Danuloff specifically questioned plaintiff about his past threats, was primarily focused on plaintiff's ability to complete his duties as a PSO adequately and safely. Under these circumstances, the mental examination did not constitute an adverse action.

Even viewing plaintiff's claim as including his later termination, plaintiff still lacks evidence of the required causal connection between the termination and his protected activity. Plaintiff argues that he demonstrated a causal connection based on Tamsen's admission that plaintiff's public complaints could give the police department a "black eye," and because Tamsen originally suggested the three-step return to work process. We disagree. Tamsen denied being "upset" or "mad at [plaintiff]" because of the whistleblowing and, as explained above,

tested plaintiff to ensure that he could function safely and effectively as a PSO. The fact that plaintiff engaged in protected activity does not immunize him from the consequences of threatening his supervisor. *West*, 469 Mich at 187. Further, it is not enough for plaintiff to show that the complained of action occurred after the protected activity; causation requires "something more than merely a coincidence in time." *Id.* at 186. Plaintiff has not made this showing.

Finally, plaintiff cannot demonstrate that defendant's reliance on plaintiff's admitted threats was pretext for retaliatory animus. In the WPA context, plaintiff must show that defendant's true motivation for refusing reinstatement was retaliation for plaintiff's prior whistleblowing. *Debano-Griffin*, 493 Mich at 176. Plaintiff has not established that the three-step process amounted to pretext. Further, Tamsen's concern over the police department's reputation does not establish that he acted on that concern, particularly in view of the other evidence of Tamsen's and Sclabassi's apprehensions over plaintiff's threats.

Because plaintiff did not demonstrate an adverse action, and did not raise a genuine issue of material fact showing a causal connection or pretext, defendant was entitled to summary disposition on plaintiff's WPA claim.

Affirmed.

/s/ Kathleen Jansen
/s/ Michael J. Talbot
/s/ Deborah A. Servitto

-9-